PER CURIAM.
This appeal arises out of an automobile accident in Mobile County, in which Chester and Mamie Woods were injured. The Woodses sued numerous defendants, including Thomas Gleason, J.E. Withering- *180 ton, and Witherington Construction Corporation, the appellees herein. The trial court granted the appellees’ motion for summary judgment, and this appeal followed. We affirm.
During the morning of February 24, 1985, Chester Woods and his wife, Mamie, were travelling west on Moffat Road in Mobile, Alabama. Moffat Road has five lanes — two westbound lanes, two eastbound lanes, and a middle turn lane. It had been raining that morning, and the roadway was wet. Mr. Woods was driving in the inside westbound lane. Steven Middleton was travelling toward the Woodses in the inside eastbound lane; his vehicle spun out of control, crossed the middle lane, and struck the Woodses’ vehicle head-on. Mr. and Mrs. Woods were injured, and Mrs. Woods was paralyzed as a result of her injuries. The accident occurred east of the Food World shopping center, which lies uphill from and north of Moffat Road. The shopping center was built in 1976, at which time Moffat Road was a two-lane highway with an open ditch on each side. In 1984, approximately six months before the accident occurred, the State had widened Mof-fat Road near the scene of the accident to five lanes.
The Woodses sued Mr. Middleton; the State of Alabama; the Alabama Highway Department; certain individuals employed by the Alabama Highway Department; J.E. Witherington and Thomas Gleason, owners of the property on which the shopping center stands; and Witherington Construction Corporation, the general contractor for the shopping center. Mrs. Woods subsequently died, and Mr. Woods was substituted as the executor of her estate. The trial court entered an order dismissing the State of Alabama and the Alabama Highway Department from the case. Summary judgment was entered for several state officials and employees. The summary judgment as to those parties was appealed, and this Court affirmed. Woods v. Wilson, 539 So.2d 224 (Ala.1989).
Mr. Witherington, Mr. Gleason, and Witherington Construction Corporation remained as defendants in the case. After discovery was completed, they also moved for summary judgment. They filed affidavits and excerpts from the depositions of the plaintiff’s expert and of an engineer with the Alabama Highway Department, in support of their motion. The plaintiff filed nothing in response to the motion. The trial court granted the motion and entered a summary judgment. Mr. Woods filed this appeal.
Mr. Woods contends that the appellees negligently constructed and maintained the improvements on their property and that, as a result, excessive amounts of rainfall were discharged from the shopping center parking lot onto Moffat Road; he further alleges that this condition caused or contributed to Mr. Middleton’s losing control of his vehicle and was thus a proximate cause of the Woodses’ injuries. The appel-lees argue that the trial court’s ruling is correct, because, they say, they breached no duty owed to the plaintiff and the evidence offered by the plaintiff established, at most, that the Highway Department’s negligent design of the Moffat Road widening project was the proximate cause of the accident.
In reviewing a summary judgment, we are governed by the same standard as the trial court in determining whether the evidence before the court presented a genuine issue of material fact. Southern Guaranty Ins. Co. v. First Alabama Bank, 540 So.2d 732, 734 (Ala.1989). Summary judgment is properly entered when the pleadings, discovery materials, and any affidavits on file show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P. In applying these principles after a careful review of the record, we conclude that the summary judgment was properly entered.
As previously noted, Moffat Road was a two-lane highway in 1976 when the appel-lees developed the land to the north of the road and built the Food World shopping center. The record discloses that an engineering company, Rester & Coleman Engineers, Inc., was hired to survey the property and to devise a drainage plan for the *181 proposed shopping center. At that time, the appellees were aware that the State had plans to widen Moffat Road, and Res-ter & Coleman forwarded a copy of the proposed plans for the shopping center and the drainage system to the Highway Department for its review and comments. Mr. James Wilson of the Highway Department responded by letter, stating that when the Highway Department widened Moffat Road, provisions would be made to dispose of the additional runoff generated by the shopping center, and that until Mof-fat Road was widened the developer would be responsible for making minimal improvements to the existing system to assure adequate drainage. Thereafter, Res-ter & Coleman sent to the Highway Department copies of the proposed plans for improvements to be made to the drainage system along Moffat Road. The Highway Department approved the plans. Nothing in the record indicates that construction of the drainage system for the shopping center deviated from the specifications in the approved plans.
In 1984, the State widened Moffat Road, covering the existing drainage ditch and adding a curb and gutter. According to the plaintiffs expert, Mr. Parrish, the modifications made by the Highway Department contributed to the flow of runoff and altered the flow of rainwater that fell on the shopping center property.
In his brief, the plaintiff discusses at length the well-settled principle of law that a landowner generally has a duty to the public to keep his property in a reasonably safe condition so as to prevent injuries to passersby. He notes that his expert, Mr. Parrish, testified about deficiencies in the drainage system designed by Rester & Coleman; he then concludes that the appel-lees can be held liable for his injuries because they accepted Rester & Coleman’s allegedly negligent work and later failed to act when they knew or should have known that their premises were in such a condition that travelers on Moffat Road were being endangered.
However, the plaintiff fails to acknowledge that even if Rester & Coleman’s drainage system design was somehow inadequate, there is no evidence that the drainage system that was in place before the State widened Moffat Road caused the runoff problems that allegedly contributed to the accident. Instead, Mr. Parrish, the plaintiff’s engineering expert, specifically testified that the drainage problems on Moffat Road did not arise from the appel-lees’ improvements, but from the alterations made in the drainage system when the Highway Department widened Moffat Road. At his deposition, Mr. Parrish was asked whether he could state with any degree of engineering certainty that water would be carried across Moffat Road by the design plan developed by Rester & Coleman and installed and used prior to the widening of Moffat Road. His answer and the subsequent exchange are set out below:
“A. [Mr. Parrish]: - Number one, when the plans were originally prepared and Moffat Road was a narrow road, two-lane road with open curbs on both sides, it’s my opinion that there would be no water carried across the center line. The water would have gone into those — any surface water would have then escaped into the open ditch.
“Q. [Attorney Partridge]: Wait a minute. When was that?
“A. Sir?
“Q. When it was a two-lane road?
“A. When Moffat Road — when this shopping center was built Moffat Road was a two-lane road, U.S. 98, with open ditches on the sides. All right. At that point the flow that came down a driveway, when it left the end of the driveway, went into the ditch on the side of the road.
“Q. Okay.
“A. All right. At that point it would be my opinion that there would be no water propelled into Moffat Road.
“Q. Okay.
“A. All right. Second, when the State came and widened the road, added the curb and gutter going east and west, contributed flow from upstream, otherwise altering the configuration, then water would then go out into Moffat Road.
*182 “Q. Simply because there was not a ditch there to catch it?
“A. Yes, sir.”
(Tr. 1710-11)
Mr. Parrish further testified that, in his opinion, the employees of the Highway Department inadequately performed the review and redesign of the Highway Department’s original drainage plans for Moffat Road, because the drainage pipes put in place during the widening of the road do not account for the known runoff generated in the area. The appellant’s own expert testified that under the plans for drainage improvement proposed prior to the appel-lees’ development of the land, the runoff would have been channelled into the ditch along Moffat Road, which then consisted of only two lanes. In the expert’s opinion, it was only after the Highway Department widened Moffat Road and covered the ditch that water would be propelled into the roadway.
Under this state of the record, we are compelled to affirm the trial court’s summary judgment in favor of the developers of the shopping center.
AFFIRMED.
HORNSBY, C.J., and JONES, SHORES, HOUSTON and KENNEDY, JJ., concur.