INGRAM, Justice.
This case arose from a dispute between a realtor, Century 21 AAA Better Homes, Inc., and its employees, David Lamb and Tom Shelton (hereinafter collectively referred to as “Century 21”), and SouthTrust Bank of Calhoun County (“SouthTrust”), concerning SouthTrust’s refusal to pay Century 21 a commission on a property sold at a foreclosure sale. Century 21 sued SouthTrust, stating claims based on fraud, negligence, quantum meruit, work and labor done, and breach of oral contract. The trial court granted SouthTrust’s motion for a summary judgment on the fraud and negligence claims and dismissed the quantum meruit and work and labor done claims. However, it denied a summary judgment on the breach of oral contract claim. After discovery on the oral contract claim, SouthTrust made a second motion for a summary judgment on that claim, which the trial court granted.
The dispositive issue on this appeal is whether Century 21 produced sufficient evidence in support of its claims to defeat SouthTrust’s motions for summary judgment after SouthTrust had made a prima facie showing that there were no genuine issues of material fact and that it was entitled to a judgment as a matter of law.
A motion for summary judgment may be granted only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), AR.Civ.P.; Southern Guar. Ins. Co. v. First Alabama Bank, 540 So.2d 732, 734 (Ala.1989). The burden is, therefore, upon the moving party to clearly show that there is no material fact in dispute, and all reasonable inferences from the evidence are to be viewed most favorably to the nonmov-ant. Southern Guar. Ins. Co., supra, at 734.
Rule 56 is read in conjunction with the “substantial evidence rule,” § 12-21-12, Ala.Code 1975, for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). In order to defeat a properly supported motion for summary judgment, the opposing party must present substantial evidence creating a genuine issue of fact. Substantial evidence is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the facts sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
SouthTrust acquired a mortgage on a certain hotel in Anniston, Alabama, in 1987. The mortgagor defaulted on the mortgage, prompting SouthTrust to conduct a foreclosure sale in 1990. Century 21 contends that it made direct contact with SouthTrust before that sale and reached an oral agreement with SouthTrust. Under the agreement, Century 21 says, SouthTrust would pay Century 21 a commission if Century 21 produced a buyer for the hotel. Only one buyer attended the sale; that was Ken Bice, an officer of Telnet Corporation. Telnet purchased the hotel for $87,000. Century 21 asserts that it was extensively involved in the transaction by showing Bice the property and influencing him to purchase the hotel.
After this action was commenced, South-Trust supported its first motion for summary judgment with copies of the mortgage and deed relating to the hotel and with affidavits from two of its officers, William Pitts and Alan Morris, who both testified that South-Trust had no written or oral agreement with Century 21 concerning the sale. In opposition to the motion, Century 21 produced an affidavit from Tom Shelton, the Century 21 agent who, it contends, had dealt most closely with Bice before the sale. Shelton testified to the following:
“When it appeared SouthTrust would have to foreclose the property I called Alan Morris, an officer of SouthTrust, to be sure that they would pay me if I produced a buyer before the foreclosure, to *1338 buy from the bank. Mr. Morris assured me that I would be paid for finding a buyer if the bank foreclosed, and was able to sell to plaintiffs buyer....
“He did not warn me that if I produced a buyer who did buy at foreclosure they would try to keep from paying me. Since I had been reassured that I would be paid if the property sold to plaintiffs buyer at foreclosure, before foreclosure or after foreclosure, I arranged to show the property to Mr. Ken Bice. The manager of the property went with us during Mr. Bice’s inspection.
“I continued to try to assist the bank in the transaction by trying to locate Richard Dennis (the former owner) to facilitate the sale, and encouraged Mr. Bice to buy the property at foreclosure if that was the only way he could buy it. There were several meetings Mr. Bice had with bank officials prior to the foreclosure because Mr. Bice told me about them. I also asked Mr. Bice to remind the bank that he had come through us before the foreclosure, so they, would not think he had just happened on the scene, totally on his own.
“I relied on the bank’s representations and agreement and did not personally appear at the foreclosure. I was confident that our commission was secure and relied on the bank’s promise, made by Mr. Alan Morris, to pay us if our buyer bought the property, which he did. The bank knowingly received the benefit of my work and labor, and the standard and reasonable value of such services as I performed is in this community 10% of the sale price. I have knowledge of the reasonable value of these services because of my many years experience in the real estate business here in this county. The defendant has been unjustly enriched by that amount.”
As stated above, the trial court granted SouthTrust’s summary judgment motion as to Century 21’s fraud and negligence claims and dismissed the quantum meruit and work and labor done claims. It denied the motion as to the claim alleging breach of an oral contract.
SouthTrust then made a second motion for summary judgment on the oral contract claim, producing a transcript of a taped telephone conversation between Tom Shelton and Alan Morris. Shelton had taped the conversation with Morris; the conversation had occurred after the sale. In the second motion SouthTrust primarily argued that in the conversation Shelton admitted having no contract with SouthTrust. In opposition to the second motion, Century 21 argued that Shelton’s use of the word “contract” in the conversation simply referred to a formal, written contract and noted that the conversation reveals Morris’s admission that he had previously stated that SouthTrust would “work” with Shelton and Century 21. Century 21 also submitted affidavits from two realtors, both past presidents of the State Association of Realtors, who stated that to make an oral agreement between a property seller and a realtor to pay a commission upon the realtor’s location of a buyer for the property is a common practice in the real estate business.
The transcript reveals the following conversation between Shelton and Morris:
“Shelton: Remember last time you and I talked we—
“Morris: A long time ago.
“Shelton: Yeah. But you told me to talk to Ken and I did and I asked him if he would remind y’all that he had come through me, you know, to get involved in the purchase and he told me he had.
“Morris: Well, we went to foreclosure on the courthouse steps with that thing and he bought it on the courthouse steps.
“Shelton: At foreclosure.
“Morris: At foreclosure.
“Shelton: I knew that. Well you know the reason I had pursued it was, of course, that he was my customer.
“Morris: Uh-huh.
“Shelton: And that I had pursued him and got him, of course, interested in it and kept him interested in it.
“Morris: Uh-huh.
“Shelton: And, of course, when y’all went to foreclosure I just assumed, well, you know, you knew where the customer came from, I would probably get paid. And, of *1339 course, it didn’t work out like that apparently, but I just didn’t know whether you did need to talk to me about it or you know what the reason was but anyhow I just wanted to check off with you on it.
“Morris: Well, I don’t know what to say I can’t think it was last December we foreclosed on that thing as I recall [sic]. And, you know, Ken didn’t mention anything about needing to, you know, we sold it to him on the courthouse steps. And there was no sales contract that I was aware of—
“Shelton: No, there never was.
“Morris: —with you[r] involvement.
“Shelton: There never was. You know, when you and I talked about it you mentioned to me that or you told me that if you did foreclosure and still work with me [sic],
“Morris: I — well—
“Shelton: I didn’t think about, Well, gee, maybe I had better get a sales contract or get a listing or get something like that.’
[[Image here]]
“Shelton: ... Anyhow I just felt like that I had been shut out of the deal but not quite fairly because he was my customer, and I had kept him interested in and kept him involved and encouraged him to continue with the purchase, I just felt like I should have had some consideration.
“Morris: Well, I would think that if you feel that way that your Mr. Bice would be the one you would want to talk to much more so than us because you basically represented him, regarding that purchase in that property ...
“Shelton: Well no, actually, see, there was no time that I represented him; in real estate you’re either hired by the seller or hired by the purchaser, and he didn’t hire me. And of course he wasn’t planning on paying me because he hadn’t hired me. He of course understood that if there was any possibility of commission that it would have been from the Bank anyway. But anyhow ...
“Morris: Well certainly, we had not contracted ivith you to sell that property.
“Shelton: I knoiv that. You have not made a contract, but what I had from ivhat you told me that you’d said that if you did foreclose that you would work with me. To me that was like I would be able to sell it after foreclosure also.
“Morris: Well, I, you know—
“Shelton: I guess there is a little gray area in which, you know, it slid by without that being the way that it was.
“Morris: Well I don’t really consider it to be a gray area. I consider it to be really rather black and white. We certainly did not have [a] contract here, nor had we listed the property here with you for a sale. When I said we woidd work with you it was ivorking with you if you would bring somebody wanting to buy the property.
“Shelton: Which I did, Ken Bice, I brought him to y’all. He came through me, he stayed involved with me, we talked about it all the way through, I kept in contact with him.
[[Image here]]
“Shelton: [Bice] came to me as a buyer, not as the seller. You know, I had thought that I was O.K. either way, whether it foreclosed or whether, you know, I sold it for dues.... [Everybody up there apparently knew that I was involved in it, and knew that I was talking to Ken and encouraging him to go ahead and do it....”
(Emphasis added.)
The trial court granted SouthTrust’s second motion for summary judgment against Century 21’s claim alleging an oral contract.
The trial court correctly granted South-Trust’s first motion for summary judgment on the claims of fraud and negligence. Century 21 failed to produce substantial evidence in support of those claims; thus, it did not rebut SouthTrust’s properly supported motion. See West v. Founders Life Assurance Co. of Florida, supra.
However, we conclude that the trial court erred in granting SouthTrust’s second motion for summary judgment on the claim alleging an oral contract or oral agreement. It appears that the trial court relied upon that part of the transcript of the telephone *1340 conversation between Shelton and Morris where Shelton agreed with Morris that there was no sales contract. We believe that a careful reading of the whole transcript indicates that while there was no formal written contract there was enough evidence of an oral agreement between Shelton and Morris (on behalf of SouthTrust) to make summary judgment inappropriate. In the conversation, Morris admits having previously spoken with Shelton concerning Shelton’s assistance in locating a purchaser for the property. As stated above, affidavits submitted by Century 21 indicate that oral agreements such as the one Shelton alleges are common.
Viewing all reasonable inferences from the record most favorably to Century 21, we hold that the conflicting evidence concerning whether Century 21 and SouthTrust had an oral agreement created a genuine issue of fact that should be resolved by the jury. See Clayton v. Simpson, 346 So.2d 457 (Ala.Civ.App.1977); Ingram v. Brookbank, 45 Ala.App. 388, 231 So.2d 164 (1970).
We further hold that the trial court improperly dismissed Century 21’s claim for a recovery based on the theory of quantum meruit and on a claim for work and labor done. Century 21 produced sufficient evidence to create a genuine issue of material fact on these claims. Even if the jury does not find that an oral agreement existed between Century 21 and SouthTrust, it could still determine that Century 21 may recover under the theory of quantum meruit, or, in the alternative, for work and labor done.
The judgment of the trial court is hereby affirmed as to Century 21’s claims of fraud and negligence, but it is reversed as to the claims based on the theory of quantum meru-it, work and labor done, and breach of contract.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and SHORES, STEAGALL and COOK, JJ., concur.