ROBERTSON, Presiding Judge.
This is a medical malpractice case in which Randall Lee Sledge appeals from a summary judgment entered in favor of Colbert County Northwest Alabama Healthcare Authority. We affirm. This case is before this court pursuant to § 12-2-7, Ala.Code 1975.
On April 12, 1990, Randall Sledge suffered a head trauma while he was at the Club XIII Lounge, in Sheffield, Alabama. After being taken by ambulance to Helen Keller Hospital, Sledge was treated by Dr. John Grow and Nurse Connie Pounders. Sledge was diagnosed with head trauma and alcohol intoxication, and he was released approximately one and one-half hours after he was admitted. Sixteen hours later, Sledge was admitted via ambulance to Eliza Coffee Memorial Hospital with a right-side subdural hematoma. Brain surgery was subsequently performed, and Sledge was in a coma for 22 days.
On April 9, 1992, Sledge filed a complaint in the Colbert County Circuit Court against the Colbert County Northwest Alabama Healthcare Authority, d/b/a Helen Keller Hospital (the Hospital), Dr. Larry Layne, and certain fictitiously named defendants, alleging medical malpractice. Count one of the complaint alleged that on April 12, 1990, the defendants negligently provided medical services to Sledge and that they negligently breached the acceptable standards of practice by failing to adequately diagnose and treat an acute subdural hematoma. The complaint further alleged that as a result of the defendants’ negligence, Sledge had suffered a permanent injury. Count two of the complaint alleged that a hospital-patient relationship existed between the Hospital and Sledge, that the Hospital had impliedly contracted to attend and to care for Sledge, that the Hospital had failed to perform or to fulfill its implied contract, and that as a result of the Hospital’s failure, Sledge had suffered permanent brain damage.
On May 4, 1992, the Hospital filed a motion to dismiss on the ground that the complaint failed to state a claim upon which relief could be granted. That same day, Sledge filed an amended complaint substituting Dr. John Grow for fictitious defendant “E.” Dr. Grow answered, denying the material allegations of the amended complaint and stating that the amended complaint failed to state a claim upon which relief could be granted because, he stated, the complaint did not comply with § 6-5-551, Ala.Code 1975, and the claim was barred by the statute of limitations. The Hospital filed a separate answer, asserting that the complaint failed to state a claim and denying that it had negligently provided medical services to Sledge. Dr. Layne also filed an answer. On August 20, 1992, Sledge filed a motion to dismiss Dr. Layne because Dr. Layne had had no involvement in the medical care and treatment of Sledge. Dr. Layne was dismissed the next day.
On January 8, 1993, Sledge filed a second amended complaint, substituting Connie Pounders, a licensed practical nurse, for fictitious defendants “D” and “F.” On August 18, 1993, Dr. Grow filed a motion for summary judgment; the motion was supported by the pleadings, Dr. Grow’s deposition, Sledge’s response to Dr. Grow’s interrogatories and requests for production, the affidavit of Larry D. Dixon, and testimony from the deposition of Connie Pounders. Blue Cross and Blue Shield Insurance Company filed a motion to intervene and a complaint in intervention on September 3,1993. Sledge filed a third amended complaint on September 8, 1993, to substitute Regional Emergency Services, Inc., for fictitious defendants “C”, “D”, and “K.” On September 20, 1993, Dr. Grow filed a supplement to his motion for a summary judgment, adding his own affidavit, the affidavit of the custodian of records at the Hospital, testimony from Sledge’s deposition, Sledge’s answers to Dr. Grow’s requests for admissions, and testimony from the deposition of Julia Sledge (Sledge’s mother).
On February 7, 1994, Pounders filed an amended answer, denying that she was guilty of any negligence or malpractice, and averring ' that Sledge’s second amended complaint, substituting her for fictitious defendants “D” and “F,” was barred by the statute of limitations. Pounders also filed a motion for summary judgment. The trial court entered a summary judgment on February 25, 1994, in favor of Dr. Grow, because, it held, *184 Sledge’s first amended complaint, substituting Dr. Grow for fictitious defendant “E,” was barred by the statute of limitations. Sledge filed a Rule 59, Ala.R.Civ.P. motion, which was denied. On April 14, 1994, the trial court entered a summary judgment in favor of Pounders, holding that the second amended complaint filed by Sledge was also barred by the statute of limitations.
On September 16, 1994, the Hospital moved for a summary judgment, claiming that' there was no genuine issue of material fact and that it was entitled to a judgment as a matter of law, because: (1) Dr. Grow, it said, was an independent contractor and not an agent, servant, or employee of the Hospital; (2) Dr. Grow had discharged Sledge; (3) the care given Sledge at the Hospital was not the proximate cause of his resulting injuries; and (4) Dr. Grow and Pounders each had received a summary judgment. On January 23, 1995, Sledge filed a response to the Hospital’s motion for summary judgment, along with affidavits from Ann Bailey Allen and Jesse V. Hayes. That same day, the Hospital filed a motion to strike the affidavits because, it said, the affidavits did not comply with § 6-5-548, Ala.Code 1975.
On January 24, 1995, the trial court conducted a hearing on the Hospital’s motion for summary judgment. The next day, Sledge filed a fourth amended complaint, adding an allegation that the Hospital was “negligent in hiring and supervising its nursing staff and medical staff” and alleging that the Hospital had “failed to implement procedures, guidelines, policies or rules to prevent discharge of head trauma patients in need of third-party observation without assuring its discharge of the patient is being made to a third party capable and responsible for implementing the head injury precautions.” On January 27, 1995, the Hospital moved to strike the amended complaint, claiming that the amended complaint had been filed the day after the Hospital’s motion for summary judgment was argued and submitted to the trial court; that the statutory limitations period had run; and that the amended complaint constituted a “whole new cause of action.”
On January 30, 1995, the trial court entered an order striking the affidavits of Ann Bailey Allen and Jessie V. Hayes. The trial court also entered a summary judgment for the Hospital, based upon two independent grounds: (1) that Sledge had failed to rebut the Hospital’s properly supported motion for summary judgment with substantial evidence; and (2) that the summary judgment for Pounders constituted an adjudication on the merits as between Pounders and Sledge and, therefore, that the Hospital could not be held liable under the theory of respondeat superior, the only theory of liability advanced against the Hospital during the statutory period. On March 8, 1995, the trial court entered a default judgment for $500,000 against Regional Emergency Services, Inc., the only remaining defendant.
Sledge appeals from the summary judgment for the Hospital, arguing that the trial court erred in (1) holding that the summary judgment for Pounders barred a recovery against the Hospital for vicarious liability; (2) striking the affidavits of Allen and Hayes; and (3) determining that Sledge had failed to present substantial evidence creating a genuine issue of material fact. Sledge also argues that the trial court erred in holding that Sledge had not pleaded corporate liability and thus could not proceed against the Hospital for the negligent acts of Dr. Grow, an independent contractor.
An appellate court reviewing a summary judgment uses the same standard used by the trial court. Southern Guaranty Ins. Co. v. First Alabama Bank, 540 So.2d 732 (Ala.1989). When a health care provider in a medical malpractice case moves for a summary judgment, the burden is on the health care provider
“to make a prima facie showing, by substantial evidence, that no genuine issue of material fact exists as to whether the health care provider’s alleged breach of the applicable standard of care proximately caused the injury for which damages are sought. Until this is done, the burden does not shift to the nonmovant plaintiff to present substantial evidence, through expert testimony from a similarly situated health care provider that the defendant health care provider’s conduct breached the standard of care and was the proxi *185 mate cause of the patient’s injury or death.”
Mixon v. Cason, 622 So.2d 918, 921 (Ala.1993). Substantial evidence is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). When a party opposing a motion for summary judgment offers no substantial evidence to contradict that presented by the movant, the trial court must consider the movant’s evidence uncontroverted. Shows v. Donnell Trucking Co., 631 So.2d 1010 (Ala.1994).
The Hospital supported its motion for summary judgment with deposition testimony from Sledge, Dr. Grow, Nurse Pounders, and Dr. John Murray; an affidavit from Diane Whitlock; and a certified copy of the Hospital’s medical records on Sledge. After carefully reviewing these materials, we conclude that the Hospital established, by substantial evidence, that it had not breached the applicable standard of care, and that even if it had breached it, the breach would not have been the proximate cause of Sledge’s injury. Therefore, the burden shifted to Sledge to present substantial evidence, through expert testimony from a similarly situated health care provider, that the Hospital’s conduct breached the standard of care and that the breach was the proximate cause of his injury.
“In medical malpractice cases, the plaintiff must prove negligence through the use of expert testimony, unless an understanding of the doctor’s alleged lack of due care or skill requires only common knowledge or experience.” Monk v. Vesely, 525 So.2d 1364, 1365 (Ala.1988). Therefore, we first address Sledge’s contention that the trial court erred in striking the affidavits of Allen and Hayes. The trial court’s order striking both affidavits specifically stated that Allen and Hayes did not meet the requirements of § 6-5-548, Ala.Code 1975, and, therefore, were not competent to testify as experts in this case.
Section 6-5-548 provides:
“(a) In any action for injury or damages or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care the plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill and diligence as other similarly situated health care providers in the same general line of practice, ordinarily have and exercise in a like case.
“(b) If the health care provider whose breach of the standard of care is claimed to have created the cause of action is not certified by an appropriate American board as being a specialist, is not trained and experienced in a medical specialty, or does not hold himself out as a specialist, a ‘similarly situated health care provider’ is one who:
“(1) Is licensed by the appropriate regulatory board or agency of this or some other state; and
“(2) Is trained and experienced in the same discipline or school of practice; and
“(3) Has practiced in the same discipline or school of practice during the year preceding the date that the alleged breach of the standard of care occurred.”
Sledge contends that Allen’s affidavit was submitted to show that Nurse Pound-ers’s conduct fell below the requisite standard of care. The record reflects that on April 12, 1990, Nurse Pounders was employed by the Hospital as an emergency room nurse. Her duties in the emergency room included assessing patients regarding their complaints, preparing patients for the doctors, and checking vital signs. Allen’s curriculum vitae, which was attached to her affidavit, revealed that in 1988-1989, Allen was vice president of Continental Investors Life Insurance Company and that since 1989 she has been employed as the director of Medical-Surgical Nursing at Shelby Medical Center. Section 6-5-548 requires that the expert have practiced in the same discipline as the health care provider “during the year preceding the date that the alleged breach of the standard of care occurred.” (Emphasis added.) While Allen’s affidavit describes her duties at Shelby Medical Center, nothing in *186 her affidavit or curriculum vitae describes or details her duties at Continental. Therefore, it is unclear whether Allen, while she was at Continental, practiced in the same discipline as Pounders. Additionally, nothing in the affidavit sets forth at what point in 1989 Allen went to work at Shelby Medical Center, so it is unclear where she was practicing during the year preceding April 12, 1990.
Rule 56(e), Ala.R.Civ.P., requires that affidavits “shall show affirmatively that the affi-ant is competent to testify to the matters stated herein.” Sledge failed to show affirmatively that Allen had practiced in the same discipline or school of practice as Nurse Pounders during the year preceding April 12, 1990, the date that the alleged breach of the standard of care occurred. Accordingly, pursuant to § 6-5-548, we hold that the trial court properly struck Allen’s affidavit.
Sledge contends that Hayes’s affidavit was submitted to show that the Hospital was negligent; therefore, he argues, Hayes is not subject to § 6-5-548, because, he says, that section includes only physicians, surgeons, and nurses. We disagree. Section 6-5-542 defines a “health care provider” as “[a] medical practitioner, dental practitioner, medical institution, physician, dentist, hospital, or other health care provider.” Section 6-5-481 defines a “medical institution” as “[a]ny licensed hospital ... for the examination, diagnosis, treatment, or care of human illnesses.” Because the Code includes “hospital” in its definition of a “health care provider,” we hold that Hayes’s affidavit is subject to § 6-5-548, which requires a showing by “substantial evidence that the health care provider failed to exercise such reasonable care, skill and diligence as other similarly situated health care providers in the same general line of practice, ordinarily have and exercise in a like case.”
Hayes’s affidavit merely states his conclusions that, in his opinion, “hospitals are ultimately responsible for the care of their patients, and must develop safeguards that are described within specified bylaws, policies and procedures, rules and regulations.” Hayes goes on to state that in his opinion the Hospital “failed to provide the care to Randall Sledge at such level, skill and diligence as other similarly situated hospitals would ordinarily have exercised in this or a similar case.” Our supreme court has held that “a conclusory statement based upon the affiant’s ‘information and belief,’ does not comply with Rule 56(e)’s requirement of ‘personal knowledge.’” Ex parte Head, 572 So.2d 1276, 1279 (Ala.1990). Hayes’s affidavit is devoid of any indication that he has personally reviewed any policies, procedures, rules, or regulations of the defendant Hospital or of any other hospital; it is devoid of any evidence that he is competent to determine whether a hospital’s policy is proper; and it is devoid of any testimony concerning his personal knowledge of what actions other hospitals would have taken in this situation. Furthermore, no bylaws, policies, procedures, rules, or regulations were attached to Hayes’s affidavit, as required by Rule 56(e), Ala.R.Civ.P. Hayes’s affidavit fails to establish that the Hospital failed to exercise such reasonable care, skill and diligence as other similarly situated hospitals ordinarily have and exercise in a like case. Therefore, we hold that the trial court properly struck Hayes’s affidavit.
In regard to the striking of the affidavits, Sledge also contends, relying on Rule 6(d), Ala.R.Civ.P., that the trial court erred, because the Hospital’s motion to strike the affidavits was filed the day before the hearing on the motion for summary judgment. Rule 6(d) provides that written motions “shall be served not later than 5 days before the time specified for the hearing, unless a different period is fixed ... by order of the court.” (Emphasis added.) The motion to strike was filed the very same day that Sledge filed the affidavits, the day before the hearing on the Hospital’s motion for summary judgment. Additionally, Sledge had an opportunity to respond to the motion to strike at the hearing on the motion for summary judgment. Therefore, we hold that it was not error for the trial court to consider the Hospital’s motion to strike along with its motion for summary judgment.
It is well-settled law that a plaintiff can proceed in a medical malpractice case only if he or she produces the requisite expert testimony. Monk, supra. Sledge argues that expert testimony was not necessary because, he says, this case falls within the exception to the general rule requiring *187 expert testimony. Our supreme court has recognized an exception where “the want of skill or lack of care was so apparent” that the average person does not need expert testimony to understand the malpractice. Loeb v. Cappelluzzo, 583 So.2d 1323, 1325 (Ala.1991). However, that exception has been reserved for limited situations where it was obvious that, but for the negligence, the injury would not have occurred. See Walker v. Southeast Alabama Medical Center, 545 So.2d 769 (Ala.1989); Therrell v. Fonde, 495 So.2d 1046 (Ala.1986); and Lloyd Noland Foundation, Inc. v. Harris, 295 Ala. 63, 322 So.2d 709 (1975). In this case, Dr. Crow’s deposition testimony reveals that Sledge requested to go home; that the nurses wanted to call Sledge’s relatives to come and pick him up but that Sledge refused; and that by the time the lab results were given to Dr. Grow, Sledge was “clear as a bell.” Dr. Grow also stated that Sledge did not have a hematoma at the time he was discharged and that it must have developed subsequently. Because it is not obvious that Sledge’s injury would not have occurred without some act of negligence, we conclude that the facts of this case do not bring it under the limited exception. Therefore, expert testimony was necessary to establish the elements of a prima facie case of medical malpractice and to rebut the Hospital’s motion for summary judgment. Waites v. University of Ala. Health Services Found., 638 So.2d 838 (Ala.1994).
Because the affidavits of Allen and Hayes were properly struck, we hold that Sledge failed to present the expert testimony necessary to rebut the Hospital’s properly supported motion for summary judgment. Consequently, we hold that the Hospital was entitled to a judgment as a matter of law on all issues.
The judgment of the trial court is due to be affirmed. § 6-5-548; Mixon, supra; Monk, supra; and Ex parte Head, supra.
AFFIRMED.
THIGPEN, YATES, MONROE, and CRAWLEY, JJ., concur.