The plantiffs, Thomas Mark Anderson and his wife Cynthia S. Anderson, appeal from a summary judgment in favor of the defendant Alabama Reference Laboratories ("ARL"). We affirm. *Page 808 
 I.
On September 13, 1995, Thomas Mark Anderson went to his physician, Dr. Keith Fuller, a family practitioner, complaining of various symptoms, including coughing up yellow-greenish sputum. Dr. Fuller diagnosed pneumonia and treated Anderson with antibiotics. He instructed Anderson to return on September 22. Anderson, however, returned two days later, on September 15, complaining of fatigue and high fever. Dr. Fuller again diagnosed pneumonia. As part of his treatment, Dr. Fuller collected a sputum specimen and sent it to ARL for testing. ARL tested the specimen, and the results were normal. ARL reported the results to Dr. Fuller. Anderson saw Dr. Fuller again on September 18 and 22. After the fourth visit, Anderson believed he had recovered from the pneumonia; he did not return to Dr. Fuller for any further treatment.
On November 5, Dr. Fuller received another report from ARL concerning the results from the testing of Anderson's sputum specimen. That report stated that Anderson's sputum specimen was presumptively positive for tuberculosis. Dr. Fuller contacted Anderson's wife and asked that she and Anderson come to his office. They did. Dr. Fuller told Anderson that he had tuberculosis and prescribed various drugs to treat the disease. Dr. Fuller also told Anderson to report his disease to the local county health department. Dr. Fuller told Anderson, in the presence of Anderson's wife, who was then seven-months pregnant with the couple's first child, that persons with tuberculosis may also be infected with the human immunodeficiency virus (HIV), and he recommended that Anderson submit to an HIV test. Dr. Fuller instructed Anderson that, because tuberculosis is a highly communicable disease, he should tell any persons with whom he had close, daily contact that they should be tested for tuberculosis.[1]
After his meeting with Dr. Fuller, Anderson reported to the local county health department, where he was required to sign a form promising to take the drugs for treatment of tuberculosis for one year. Anderson began taking the drugs. As a result of taking the drugs for tuberculosis, he suffered several side effects, including a rash, dizziness, fatigue, nausea, and repeated vomiting.
On November 21, Dr. Fuller received another report from ARL. That report stated that Anderson's sputum specimen tested positive for tuberculosis and that ARL's finding of tuberculosis had been confirmed by the Alabama Department of Health State Laboratory. Dr. Fuller regarded this report as definitive proof that Anderson had tuberculosis.
Approximately six weeks after he had initially diagnosed Anderson with tuberculosis, Dr. Fuller received a telephone call from either ARL or the State Health Department (Dr. Fuller said he does not recall which) and by that call was informed that DNA testing had been performed on Anderson's sputum sample. The DNA testing was performed by a microbiologist with the University of Alabama at Birmingham, as part of a state-sponsored study to determine the patterns of infection through Alabama. As a result of the DNA testing, it was discovered that Anderson's sputum specimen had been contaminated with another donor's specimen and that the tuberculosis bacterium in his specimen had come from that other person. Dr. Fuller then informed Anderson that the results of the test had been incorrect and that he did not have tuberculosis.
On October 7, 1997, Anderson and his wife filed this action against ARL in the Russell Circuit Court. They alleged that *Page 809 
ARL had negligently, wantonly, or recklessly performed the tuberculosis testing on Anderson's sputum specimen and that it had committed "legal fraud" in reporting the results of the testing and had thereby caused him to suffer severe emotional distress and economic losses and had thereby caused his wife to suffer, among other harm, a loss of consortium. ARL moved to transfer the case, pursuant to Ala. Code 1975, § 6-5-546, a section of the Alabama Medical Liability Act of 1987 ("AMLA"),[2] from Russell County to Montgomery County, arguing that ARL's place of business is located in Montgomery County and that all of the acts or omissions alleged by Anderson occurred in that county. ARL also moved to dismiss the plaintiffs' fraud claims, arguing that the action was in substance a medical-malpractice action governed by the AMLA and, therefore, that the fraud claims were superseded by the AMLA, as provided by § 6-5-552. Anderson and his wife filed no opposition to ARL's motion to transfer or its motion to dismiss their fraud claims. The Russell Circuit Court transferred the action to the Montgomery Circuit Court, and that court granted ARL's motion to dismiss the Andersons' fraud claims.[3]
Thereafter, ARL moved for a summary judgment on the plaintiffs' remaining claims. After a hearing on the summary-judgment motion, the trial court granted ARL's motion and entered a summary judgment in its favor. At the hearing, the trial judge ruled from the bench that the plaintiffs' action was subject to the AMLA and that Dr. Linda Pifer, their expert witness proffered in support of their claims, was not competent to testify concerning the alleged breach of the applicable standard of care. The plaintiffs appealed.
 II.
The Andersons' appeal presents three issues:
 I. Whether ARL falls within the definition of "other health care provider" for purposes of the AMLA.
 II. Whether the Andersons' proffered expert witness, Dr. Linda Pifer, was a "similarly situated health care provider" for purposes of the AMLA and, thus, competent to testify as to the alleged breach of the applicable standard of care.
 III. Whether the Andersons' action falls within one of the recognized exceptions to the requirement that the plaintiff in a medical-malpractice action present expert medical testimony on the alleged breach of the applicable standard of care.
We first address the applicability of the AMLA to the defendant ARL. Because the second and third issues are interrelated, we address those issues together.
 A.
The Andersons argue that ARL is not a "health care provider" within the meaning of the AMLA. The AMLA defines "health care provider" as "[a] medical practitioner, dental practitioner, medical institution, physician, dentist, hospital, or other health care provider as those terms are defined in Section 6-5-481." Ala. Code 1975, § 6-5-542(1). We agree with the Andersons, and ARL presents no argument to the contrary, that ARL does not fall within the definitions of the terms "medical practitioner," "dental practitioner," "medical institution," "physician," "dentist," or "hospital." See Ala. Code 1975, § 6-5-481. Thus, the question is whether ARL comes within the definition of "other health care providers." Section 6-5-481(8) defines "other health care providers" as "[a]ny professional corporation or any person employed by physicians, *Page 810 
dentists, or hospitals who are directly involved in the delivery of health care services."
Although this Court has not expressly held that a reference laboratory is within the definition of "other health care provider," we have implicitly recognized that such an entity is subject to the AMLA. See Marsh v. Wenzel, 732 So.2d 985 (Ala. 1998); Guthrie v. Bio-Medical Lab., Inc., 442 So.2d 92 (Ala. 1983). In Marsh, this Court applied the statute of limitations provided under the AMLA, Ala. Code 1975, § 6-5-482, to a pathology laboratory in an action involving the laboratory's alleged failure to detect cancer in a tissue sample delivered to it by the plaintiff's physician for examination. In Guthrie, this Court applied the AMLA to a laboratory in an action involving the laboratory's alleged mistyping of the plaintiff's blood specimen, which had been sent to the laboratory by the plaintiff's physician for prenatal analysis.
In Cackowski v. Wal-Mart Stores, Inc., 767 So.2d 319
(Ala. 2000), this Court held that a pharmacist is an "other health care provider" for purposes of the AMLA. In arriving at this holding, this Court construed the term "employed," as it is used in §6-5-481, to encompass more than employment or contractual relationships between physicians and persons involved in the delivery of health-care services. See id. This Court construed "employed" to apply to a person of whom the physician makes use, or whose services the physician engages. See id. Accordingly, this Court concluded that a pharmacist is a health-care provider for purposes of the AMLA "[b]ecause a pharmacist and/or a pharmacy is inextricably linked to a physician's treatment of his patients" and "the dispensing of drugs is an integral part of the delivery of health care services to the public." Id.
Similarly, in this case, Dr. Fuller employed, or engaged the services of, ARL to test a sputum specimen of his patient, Mr. Anderson. The purpose of having ARL test Anderson's specimen was directly linked to Dr. Fuller's diagnosis and treatment of Anderson. Thus, ARL's testing of Anderson's specimen was an integral part of Dr. Fuller's delivery of health-care services to Anderson. Therefore, we hold that ARL falls within the AMLA's definition of "other health care provider."
 B.
In a medical-malpractice action, once the defendant health-care provider offers in his, her, or its behalf expert testimony that makes a prima facie showing of a lack of negligence, the health-care provider is entitled to a summary judgment, unless the plaintiff produces substantial evidence indicating negligence. See Swendsen v. Gross, 530 So.2d 764, 768 (Ala. 1988). In support of its motion for summary judgment, ARL offered the affidavit of Jane Green; she is a medical technologist certified by the American Society of Clinical Pathologists ("ASCP") and was the supervisor of microbiology at ARL when it tested Mr. Anderson's sputum specimen. In her affidavit, Green states:
 "I actually perform the tuberculosis testing like that which was performed on Mark Anderson's specimen in this case, and I was also doing so during the years of 1994 and 1995. Rodney Decker, the ARL employee who performed the tuberculosis testing on Mr. Anderson's specimen, is also a medical technologist certified by ASCP.
 "I am familiar with the national standard of care for reference laboratories and medical technologists performing the type of tuberculosis testing like that performed on Mark Anderson's specimen in this case. In my opinion, ARL's mycobacteriology manual outlining the protocol for this type of testing sets out an appropriate procedure for tuberculosis testing and is in keeping with the national standard of care. In addition, it is my opinion that the testing performed on this specimen was done . . . in an appropriate fashion and neither Rodney *Page 811 
Decker, who performed this testing, nor any other employee of ARL breached the national standard of care. Further, it is my opinion that no substandard actions or omissions by any employee of ARL caused or contributed to cause the false positive tuberculosis reading of Mr. Anderson's specimen."
We conclude that Green's affidavit was sufficient to shift the burden of production to the Andersons to produce substantial evidence in support of their claims. See Swendsen, 530 So.2d at 769 (noting that "the defendants' conclusory affidavits shifted the burden of proof to the plaintiff").
As a general rule, in a medical-malpractice action, the plaintiff is required to produce expert medical testimony to establish the applicable standard of care and a breach of that standard of care, in order to satisfy the plaintiff's burden of proof. See Allred v. Shirley, 598 So.2d 1347, 1350 (Ala. 1992) (citing Tuscaloosa Orthopedic Appliance Co. v. Wyatt,460 So.2d 156, 161 (Ala. 1984)). However, "[a]n exception to this rule exists `in a case where want of skill or lack of care is so apparent . . . as to be understood by a layman, and requires only common knowledge and experience to understand it.'" Wyatt, 460 So.2d at 161 (quoting Dimoff v. Maitre, 432 So.2d 1225, 1226-27
(Ala. 1983)). This Court has recognized the following situations as falling within this exception:
 "`1) where a foreign instrumentality is found in the plaintiff's body following surgery; 2) where the injury complained of is in no way connected to the condition for which the plaintiff sought treatment; 3) where the plaintiff employs a recognized standard or authoritative medical text or treatise to prove what is or is not proper practice; and 4) where the plaintiff is himself or herself a medical expert qualified to evaluate the doctor's allegedly negligent conduct.'"
Allred, 598 So.2d at 1350 (quoting Holt v. Godsil,447 So.2d 191, 192-93 (Ala. 1984) (citations omitted inAllred). This case clearly does not fall within the first, third, or fourth situation. The Andersons argue that the facts of this case fall within the second situation. Specifically, they argue that the false test result of tuberculosis was unrelated to Anderson's pneumonia for which he sought treatment from Dr. Fuller. We disagree. The second situation applies to such cases "as an injury to an arm and shoulder during an operation for appendicitis, or an injury to an eye during the same type of operation."Powell v. Mullins, 479 So.2d 1119, 1121 (Ala. 1985) (citations and quotation marks omitted). In this case, the testing of Anderson's sputum sample was directly related to the condition for which he saw Dr. Fuller, namely, his coughing up sputum. Moreover, we find that tuberculosis testing requires a certain degree of "specialized training and knowledge that puts an understanding of the acceptable standard of care [in tuberculosis testing] beyond the common knowledge of the jury" and that "[l]aymen do not have the background and knowledge without expert testimony to understand whether or not [tuberculosis testing] has been properly [performed]." Wyatt, 460 So.2d at 162. Therefore, we conclude that none of the exceptions to the requirement of expert testimony applies to the facts of this case. Accordingly, the Andersons were required to present medical expert testimony in opposition to ARL's motion for summary judgment.
In opposition to ARL's motion for summary judgment, the Andersons presented the deposition testimony of their expert witness, Dr. Linda Pifer. ARL argued, and the trial court agreed, that Dr. Pifer was not qualified to testify against ARL as to the applicable standard of care and its breach. We agree.
To be qualified to testify as to the standard of care that ARL allegedly breached, Dr. Pifer had to come within the definition of a "similarly situated health care provider" under §6-5-548(b), the subsection that applies to the facts of this *Page 812 
case, see Medlin v. Crosby, 583 So.2d 1290, 1296 (Ala. 1991). Section 6-5-548(b) defines a "similarly situated health care provider" as "one who meets all of the following qualifications":
 "(1) Is licensed by the appropriate regulatory board or agency of this or some other state.
 "(2) Is trained and experienced in the same discipline or school of practice.
 "(3) Has practiced in the same discipline or school of practice during the year preceding the date that the alleged breach of the standard of care occurred."
The Andersons allege that ARL failed to properly perform tuberculosis testing on Mr. Anderson's sputum specimen, by allowing it be contaminated with the specimen of another donor, so that it gave an inaccurate test result. Thus, the standard of care to be applied to this case is that of a "health care provider" practicing tuberculosis testing. See Medlin, 583 So.2d at 1293. The ARL employee who performed the tuberculosis testing, Rodney Decker, is a certified medical technologist.
Dr. Pifer received a Ph.D. degree in microbiology in 1972. Dr. Pifer testified that the field of microbiology encompasses the laboratory analysis of different types of bacteria and viruses, including the bacterium that causes tuberculosis. Her curriculum vitae and her deposition testimony indicate that she has done extensive research, has written several publications, and has had significant teaching and academic experience. Since 1990, she has worked as a tenured professor at the University of Tennessee at Memphis, in the Department of Clinical Laboratory Sciences, where her students include medical-technology students. Dr. Pifer is licensed by the State of Tennessee as a medical-laboratory professional. Dr. Pifer testified that her license is the equivalent to that held by a medical technologist in Alabama and that it is in the same field as that of ARL's employees Green and Decker. Based on this evidence, we find that Pifer meets the requirements of § 6-5-548(b)(1) and (2).
Dr. Pifer does not, however, meet the requirement of (b)(3). Although Dr. Pifer has training and experience in the general field of microbiology, she does not have recent training or experience in the specific field of tuberculosis testing. In her deposition testimony, Dr. Pifer admits that she has never worked in a reference or clinical laboratory or a mycobacteriology department; that prior to the time of the testing that is the basis of this case, she never supervised, or participated in, the performance of tuberculosis testing and never did any of the kinds of tuberculosis testing that were performed by ARL on Anderson's sputum specimen; that she has no practical experience in the field of mycobacteria or tuberculosis testing; that she has no personal knowledge of quality-assurance programs at clinical or reference laboratories that conduct tuberculosis testing; that she is not familiar with the tuberculosis-testing guidelines recommended by the primary certifying agency for clinical laboratories; that she is not familiar with the Centers for Disease Control guidelines relating to mycobacteriology and tuberculosis testing; that she has not written any article relating to tuberculosis testing; and that she has no teaching experience in the area of tuberculosis testing. Finally, in her deposition testimony, Dr. Pifer admits that she does not practice in the same specialty as Decker or Green. Dr. Pifer testified in pertinent part:
 "Q. In 1994 and 1995, were you actively practicing in the same specialty as Mr. Rodney Decker?
"A. No.
"Q. How about Jane Green?
"A. No.
 "Q. How about anybody who was working at Alabama Reference Laboratory [sic]?
"A. I have no idea who all works there.
 "Q. Anybody working at Alabama Reference Laboratory who had any *Page 813 
contact with the tuberculosis department?
"A. I guess not."
(Deposition of Dr. Pifer at 256.) Because Dr. Pifer's own testimony shows that she did not practice in the specialty of tuberculosis testing in the year preceding the testing of Anderson's sputum specimen, she does not qualify as a "similarly situated health care provider" and, thus, is not competent to give expert testimony concerning ARL's alleged breach of the applicable standard of care. See Loeb v. Cappelluzzo, 583 So.2d 1323 (Ala. 1991); Jordan v. Brantley, 589 So.2d 680 (Ala. 1991); cf. Dowdyv. Lewis, 612 So.2d 1149 (Ala. 1992) (holding that the two expert witnesses proferred by the defendant nurse were competent to give expert testimony concerning the standard of nursing care involved in the case, which involved medical-surgical nursing, because both had extensive practical and teaching experience in medical-surgical nursing). The lack of such testimony results in a lack of proof essential to the Andersons' case. See Jordan, 589 So.2d at 693.
 III.
Because the Andersons were required to present expert testimony concerning ARL's alleged breach of the standard of care and because the Andersons presented no testimony of a similarly situated health-care provider in response to ARL's properly supported motion for summary judgment, the trial court properly entered summary judgment for ARL.
AFFIRMED.
Hooper, C.J., and Houston, Lyons, and Brown, JJ., concur.
Cook, Johnstone, and England, JJ., dissent.
Maddox, J., recuses himself.
[1] Anderson's wife and several members of his family later had themselves tested for tuberculosis.
[2] We note that the Alabama Medical Liability Act of 1987 supplements the Alabama Medical Liability Act. See Ala. Code 1975, § 6-5-541. For purposes of this opinion, we refer to the two Acts collectively as the "AMLA."
[3] The Andersons do not challenge on appeal the dismissal of their fraud claims.