851 So.2d 24 (2002)
Sharon HEATH and Thurman Heath
v.
HealthSOUTH MEDICAL CENTER.
2000807.
Court of Civil Appeals of Alabama.
May 3, 2002.
*25 D. Leigh Love of Love, Love & Love, P.C., Talladega, for appellants.
Joe L. Leak and Robert G. Boliek, Jr., of Friedman, Leak & Bloom, P.C., Birmingham, for appellee.
CRAWLEY, Judge.
Sharon Heath and Thurman Heath,[1] husband and wife, appeal from a summary *26 judgment entered against them on their claims against HealthSouth Medical Center stemming from a fall Mrs. Heath suffered while she was being treated as a patient in that facility. We reverse and remand.
Heath had been admitted to the Health-South facility for back surgery. After her surgery, which was successfully performed, Heath was transferred to the rehabilitation section of the facility. Immediately before her transfer and before she left the surgical ward on November 21, 1999, she was given 5 milligrams ("mg.") Valium, 10 mg. morphine, and a Percodan tablet.[2] Shortly after arriving at the rehabilitative floor of the facility, she received a second Percodan tablet. The Percodan was supposed to be given at four-hour intervals, but Heath received the second Percodan tablet 2 hours and 45 minutes after she had taken the first one. In addition, Heath did not receive a scheduled dose of her insulin.[3] Heath's assigned nurse at the rehabilitative unit, Kathy Reid, an L.P.N. and a new employee working her first day on the rehabilitation unit, raised two side rails[4] (one rail on each side of the bed) of the four side rails on Heath's bed and left her with a buzzer near her hand.
Heath testified in her deposition that, shortly after she received the second Percodan tablet, she needed to use the bathroom, and she rang the buzzer to summon a nurse. Heath said that after she rang the buzzer, she waited "anywhere from 30 minutes to an hour" for a nurse to come and assist her to the bathroom. The evidence as to whether the nurses were aware of the activation of Heath's buzzer or whether the buzzer was actually working is disputed. Heath testified that, although she knew that her doctor had instructed her not to get up from her bed without the assistance of a nurse, she was unable to wait any longer and she began to climb out of bed by herself. Heath said that when she put weight on her left foot, it gave way and she fell, breaking her left hip. She immediately underwent surgical open reduction and internal fixation of the left intertrochanteric fracture.
On March 20, 2000, the Heaths sued HealthSouth, and various fictitious defendants, alleging that the defendants had breached the standard of care in providing care and treatment for Heath while she was a patient in the facility. Specifically, they alleged that the defendants (1) had failed to identify Heath as a patient "at risk" for falling, (2) had failed to properly supervise and monitor Heath while she was being treated in the facility, (3) had failed to train its nursing staff on safety issues, and (4) had failed to respond to Heath's calls for assistance.
On February 20, 2001, HealthSouth moved for a summary judgment, stating as grounds that no genuine issue of material fact existed as to the defendants' breach of the standard of care. HealthSouth supported its motion with the affidavit of Lola Patterson, R.N. On March 1, 2001, the Heaths responded to HealthSouth's summary-judgment motion with the affidavit testimony of Julie Akin, R.N. On March 2, 2001, HealthSouth submitted a supplemental affidavit of Ms. Patterson that was substantially the same as the initial affidavit, along with a certified copy of Heath's medical records from her November 1999 hospital stay at HealthSouth. Shortly thereafter, HealthSouth moved to strike Ms. Akin's affidavit, contending that she *27 was not a qualified expert pursuant to § 6-5-548, Ala.Code 1975, which requires that the health-care expert have practiced in the same discipline as the health-care-provider defendant "during the year preceding the date that the alleged breach of standard of care occurred." § 6-5-548(b)(3). The trial court determined that Ms. Akin did not meet those requirements, struck her affidavit, and granted Health-South's summary-judgment motion.
The Heaths filed a postjudgment motion, which the trial court denied. Thereafter, the Heaths appealed to the Supreme Court; that court transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975. On appeal, the Heaths argue that the trial court erred by striking the testimony of their expert, Julie Akin, R.N., on the grounds that it did not comply with § 6-5-548. They also argue that expert testimony was not necessary in this case to establish the applicable standard of care and the breach of that standard.
We review a summary judgment de novo; we apply the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Rule 56(c)(3); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). The court must view the evidence in a light most favorable to the nonmoving party and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990). If the movant meets this burden, "the burden then shifts to the nonmovant to rebut the movant's prima facie showing by `substantial evidence.'" Lee, 592 So.2d at 1038 (footnote omitted). "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21-12(d). See Ex parte General Motors Corp., 769 So.2d 903 (Ala.1999), and Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala. 1989), for further discussion of the application of the summary-judgment standard.
HealthSouth supported its motion for a summary judgment with the affidavit of a registered nurse, Lola Patterson, who had worked for 20 years in patient care, and then in 1987 became an educator in nursing-staff development at the University of Alabama in Birmingham. Ms. Patterson opined in her affidavit that neither Health-South nor its employees had breached a standard of care in treating Heath. She further stated that it was her opinion that Heath had put herself at risk by getting out of bed unassisted when her doctors had advised her against doing so. In response to the defendants' summary-judgment motion, the Heaths filed a responsive motion supported with the affidavit, as well as the deposition testimony of Julie Akin, a registered nurse who is presently employed as a workers' compensation consultant. On March 5, 2001, HealthSouth moved to strike the affidavit and deposition testimony of Julie Akin, R.N., stating as grounds that Akin was not a "similarly situated health care provider" who had "practiced in the same discipline or school of practice during the year preceding the date that the alleged breach of the standard of care occurred." § 6-5-548, Ala. Code 1975.
The trial court entered a summary judgment for HealthSouth. In its judgment the trial court stated, in pertinent part:

*28 "In response to the Defendant's motion, the Plaintiffs offer in rebuttal the testimony of their expert, Julie Akin, R.N. While Ms. Akin may, in fact, counter the Defendant's proposition, the Defendant moves to strike her testimony under the contention that Julie Akin is not a qualified expert under the provisions of § 6-5-548, Ala.Code 1975. Section 6-5-548, in pertinent part, requires that the expert have practiced in the same discipline as the health care provider `during the year preceding the date that the alleged breach of standard of care occurred.' It is undisputed that the alleged breach occurred on November 21, 1999; therefore [pursuant to the terms of the statute Ms. Akin is required to have been engaged in nursing practice] between November 21, 1998, and November 21, 1999. In Ms. Akin's resumé attached to her affidavit it appears that she worked as a workers' compensation Case Manager from April 1998, to July 2000. Moreover, in her deposition she describes her duties as follows:
"`Q: Now, during the time you worked for Directions [Management Company] and Genex, I think you indicated that those were full-time employments there?
"`A: Correct.
"`Q: Did you do any flex-time or part-time nursing while you were working there?
"`A: No.
"`Q: How would you describeI mean, I have some familiarity with work as a work. comp. case manager, but tell us in your own words whathow you would describe that job when people ask you?
"`A: Basically what my job entails is I deal with the injured employee, and I usually follow them throughout their course of treatment. I work with the employee, the employer, the physician, physical therapy if there is any ordered. And basically my responsibility is to ensure that all the patient's needs are met in a timely manner and if they have any questions, they are addressed.
"And I'm kind of like a middle person, I report back to the insurance company, my company, which would have been Directions or Genex and I also contact the employee's attorney if they have one. So, I'm pretty much responsible to a lot of different people. But my goal is to get the patient back to work in a timely manner and in a safe manner.
"`Q: Would it be true that you weren't providing any actual nursing services to the employees in your capacity as a work comp case manager?
"`A: [What do] you mean by nursing services?
"`Q: I mean hands-on treatment such as what you're doing now a[t] [Druid City Hospital] or what you've done in treatment of patients at hospital facilities.
"`A. Right. I did not do direct patient care, but I reviewed records to make sure that care was given as it should have been or if there was anything missed, you know, I made recommendations and so forth.'
"Based on her testimony, it seems clear to the Court that Ms. Akin was not engaged in actual hands-on care and treatment of patients as a registered nurse during the year preceding the alleged breach (November 21, 1999). The Plaintiffs cite the case of Dowdy v. Lewis, 612 So.2d 1149 (Ala.1992), in support of their position. In Dowdy, the Court *29 held that expert witnesses who possessed post-graduate degrees in nursing and who were engaged in the teaching of nursing, qualified as similarly situated health care providers within the meaning of the Alabama Medical Liability Act, reasoning that although the experts had not performed acts related to the care of persons hospitalized, they devoted their full time efforts to the teaching of nursing, which established their competence to testify because the witnesses made it their business to determine what was on the cutting edge of the profession by continual study of the modern trends in nursing. In the case at bar, there is no evidence before the Court that Ms. Akin was engaged in any teaching or other instructive activity. In fact, in gathering from her testimony, her duties as a workers' compensation Case Manager mainly consisted of arranging and scheduling treatment with various health care providers for employees who have been injured on the job.
"Therefore, the Court must conclude based upon the pleadings and evidence submitted that Ms. Akin does not qualify as a similarly situated health care provider under the provisions set forth in § 6-5-548, Ala.Code 1975. Accordingly, the Defendants' Motion to Strike the affidavit and testimony of the Plaintiffs' witness, Julie Akin, R.N., is hereby GRANTED. The Court further finds and determines that the Plaintiffs, Sharon and Thurman Heath, without additional expert testimony, have failed to meet their burden of proving by substantial evidence any breach of the applicable standard of care, and therefore, the Defendant's Motion for Summary Judgment is due to be and is hereby GRANTED."
Citing Swendsen v. Gross, 530 So.2d 764 (Ala.1988), our supreme court held: "In a medical-malpractice action, once the defendant health-care provider offers in his, her, or its behalf expert testimony that makes a prima facie showing of a lack of negligence, the health-care provider is entitled to a summary judgment, unless the plaintiff produces substantial evidence indicating negligence." Anderson v. Alabama Reference Labs., 778 So.2d 806, 810 (Ala. 2000); see also Sledge v. Colbert County Northwest Alabama Healthcare Auth., 669 So.2d 182 (Ala.Civ.App.1995); Ex parte Waddail, 827 So.2d 789 (Ala.2001). Relying on Swendsen, the supreme court held that even a party's conclusory affidavits are sufficient to shift the burden of proof to the nonmoving party on a summary-judgment motion. Anderson, 778 So.2d at 811.
Generally, in a medical-malpractice action, the plaintiff is required to produce expert medical testimony to establish the applicable standard of care and a breach of that standard of care, in order to establish a prima facie case. Allred v. Shirley, 598 So.2d 1347, 1350 (Ala. 1992). However, an exception to this rule arises when the circumstances are such that the lack of care or skill are so obvious that any layperson with common knowledge and experience could comprehend it. Tuscaloosa Orthopedic Appliance Co. v. Wyatt, 460 So.2d 156, 161 (Ala.1984). Our supreme court has recognized the following situations as falling within this narrow exception: (1) where a foreign instrumentality is located in the plaintiff's body after surgery; (2) where the injury sustained is completely unrelated to the condition for which the plaintiff sought medical treatment; (3) where the plaintiff relies upon a recognized standard or authoritative medical text or treatise to prove what is or is not proper practice; and (4) where the plaintiff is himself or herself a medical expert qualified pursuant to the Alabama *30 Medical Liability Act ("AMLA") to evaluate the doctor's allegedly negligent conduct. The Heaths contend that a layperson with ordinary life experience would be able to comprehend the breach of care Heath alleges occurred.
In the present case, we conclude that what constitutes a patient "at risk" for falling and what are the proper monitoring standards, precautions, and procedures to follow when caring for a patient "at risk" for falling are both questions to be answered by experts in the field of nursing care. We, therefore, hold that § 6-5-548 requires expert testimony to demonstrate how HealthSouth breached its duty with respect to Heath's allegation that she was a patient "at risk" for falling and how such a breach, if it occurred, caused or contributed to Heath's injury.
We acknowledge that expert testimony sufficient to satisfy a plaintiff's burden of establishing the standard of care and a breach of that standard may come from the defendant health-care provider or its employees. See Tant v. Women's Clinic, 382 So.2d 1120 (Ala.1980). The record contains the deposition testimony of two HealthSouth employeesMary Ruth Lavender, Reid's supervisor and the charge nurse on the floor where Heath was a patient, and Linda Sue Stanley, Lavender's nursing supervisorsubmitted in support of HealthSouth's motion for a summary judgment. The testimony of those two witnesses tended to show that Heath, upon her admission to Health-South, was classified as a patient "at risk" for falling. Taken together, the testimony of Lavender and Stanley indicates that Heath's at-risk classification was based upon her preadmission assessment, which took into account her past medical history and her current physical condition. Although Lavender and Stanley agreed that Heath was at risk for falling, they disagreed about the implications of that designation. Lavender testified that an at-risk patient should have all four rails of her hospital bed raised, but that it is within the attending nurse's discretion to raise only two bed rails if the patient so requests and the nurse either determines that that practice is safe or asks a family member to stay with the patient. Lavender testified that neither she nor Reid asked one of Heath's family members to stay with Heath. Stanley testified that an at-risk patient need have only two bed rails elevated. We conclude that the testimony of Lavender and Stanley establishes a prima facie showing that HealthSouth did not breach the applicable standard of care as to the elevation of bed rails, and Heath did not rebut that showing.
We also hold, however, that no expert testimony was required to establish that HealthSouth breached its duty of care with respect to Heath's allegation that HealthSouth's nursing staff failed to respond to her calls for assistance in walking to the bathroom and that, as a proximate consequence of that failure, Heath attempted to walk to the bathroom by herself, fell, and was injured. See Newhall v. Central Vermont Hosp., Inc., 133 Vt. 572, 349 A.2d 890 (1975).
In Newhall, the Vermont Supreme Court was faced with facts almost identical to the facts in the instant case. There, a hospital patient who had waited a "long time" for the nursing staff to respond to her call light attempted to walk to the bathroom without assistance and fell. The Vermont court held that the patient was not required to present expert testimony as to the unreasonableness of the delay in answering her call light because the alleged lack of care related to matters that were reasonably within the knowledge and experience of the average layperson. The court stated:

*31 "We perceive nothing technical or beyond the common knowledge of a layperson in the essential function of supplying a bedpan with reasonable expedition to a bedpatient in a hospital. Ministering to the fundamental needs of such a patient is, as plaintiff argues, essentially routine care, ministerial and not technical. It is well within the applicable rule requiring `such reasonable care as the patient's known (or should be known) condition may require or demand.' Here the evidence showed a patient relatively immobile, previously supplied with a bedpan, and under sedative medication. No special skill is required to supply a bedpan when needed; no special expertise is required to foresee the possibility of a fall resulting from the patient's attempt to supply the deficiency in care."
133 Vt. at 574, 349 A.2d at 892 (citations omitted) (quoting Kastler v. Iowa Methodist Hosp., 193 N.W.2d 98 (Iowa 1971), and Restatement (Second) of Torts § 283 (1965)). See also Veesart v. Community Hosp. Ass'n, 211 Kan. 896, 508 P.2d 506 (1973) (holding that a patient who broke his leg in a fall while going from his hospital bed to the bathroom was not required to present expert testimony regarding the standard of care); Rewis v. Grand Strand Gen. Hosp., 290 S.C. 40, 42, 348 S.E.2d 173, 174 (1986) (holding that "since the matter of a fall is not a technical one outside the comprehension of a layman," "[t]he common knowledge or experience of the jurors was sufficient to enable them to infer a lack of proper care and the causal link to [the plaintiff's] fall"); McGraw v. St. Joseph's Hosp., 200 W.Va. 114, 120, 488 S.E.2d 389, 395 (1997) (surveying cases involving hospital-fall incidents and concluding that in "cases addressing hospital fall incidents ... a majority of jurisdictions do not require expert testimony"). See generally Annotation, Necessity of Expert Evidence to Support Action Against Hospital for Injury to or Death of Patient, 40 A.L.R.3d 515, § 10 (1971).
In McGraw v. St. Joseph's Hospital, 200 W.Va. at 121, 488 S.E.2d at 396, the Supreme Court of Appeals of West Virginia, quoting a Wisconsin decision, Cramer v. Theda Clark Memorial Hospital, 45 Wis.2d 147, 172 N.W.2d 427, 428 (1969), "articulated the rationale used by jurisdictions that generally do not require expert testimony in hospital fall cases":
"`Courts generally make a distinction between medical care and custodial care or routine hospital care. The general rule is that a hospital must in the care of its patients exercise such ordinary care and attention for their safety as their mental and physical condition, known or should have been known, may require.... If the patient requires professional nursing or professional hospital care, then expert testimony as to the standard of that type of care is necessary.... But it does not follow that the standard of all care and attention rendered by nurses or by a hospital to its patients necessarily require[s] proof by expert testimony. The standard of nonmedical, administrative, ministerial or routine care in a hospital need not be established by expert testimony because the jury is competent from its own experience to determine and apply such a reasonable-care standard.'"
McGraw, 200 W.Va. at 121, 488 S.E.2d at 396 (emphasis added in McGraw).
We do not believe the foregoing authorities are contrary to existing Alabama law. Our supreme court has decided two cases with facts similar to the facts in this case, i.e., a patient was injured in a fall and sued the health-care provider. See Walker v. Southeast Alabama Med. Ctr., 545 So.2d 769 (Ala.1989), and Loeb v. Cappelluzzo, 583 So.2d 1323 (Ala.1991). In Walker, the *32 supreme court held that a health-care provider could be held liable for a patient's fall when the patient got out of bed unassisted. In Walker, the doctor had left specific written orders that the side rails on the patient's bed were to be kept in the raised position. The facts were undisputed in Walker that when the night nurse gave Ms. Walker a injection of pain medication, she left the bed rail in the lowered position, against the doctor's express orders. The supreme court concluded that the circumstances presented in Walker fell within the limited exception to the expert rule: "The breach of care alleged by the Walkersthat the bedrail was left in the down position contrary to the orders of Mrs. Walker's doctoris so apparent as to be understood by a layman." Walker, 545 So.2d at 771.
In Loeb, a 73-year-old patient sued her physician and his staff member under the AMLA for an injury the patient sustained when she fell from a swivel stool in an examination room. In Loeb, the patient alleged that the staff member showed her into an examination room and closed the door, leaving her to wait for the physician without first assisting her up onto the examination table. No chair was available; the only items of furniture in the examination room were a swivel stool on which the doctor customarily sat, a small wooden step stool, and an examination table. When the physician entered the room, the patient rose to greet him and fell to the floor.
At trial, the patient, who was unable to qualify her expert witnesses under § 6-5-548,[5] argued that the AMLA did not apply because, she said, the case did not involve the care or treatment that a physician gives to a patient. Instead, the patient maintained, the standard of care was the same duty that any premises owner owes to an invitee. Stating that the parties had agreed to try the case under the AMLA and the court's pretrial order had restricted the patient to that theoryour supreme court affirmed a summary judgment in favor of the physician because, it held, expert testimony was required to establish a breach of the standard of care.
Neither Walker nor Loeb dictates that expert testimony is always required to establish the standard of care when a patient suffers a fall in a medical facility. We think the circumstances of Heath's injury, insofar as that injury was alleged to have been proximately caused by the defendants' failure to answer Heath's calls for assistance, come within the comprehension of the ordinary layperson and qualify as an exception to the expert-testimony rule of the AMLA.
The judgment of the circuit court is reversed, and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
YATES, P.J., concurs.
MURDOCK, J., concurs in the result.
THOMPSON and PITTMAN, JJ., dissent.
PITTMAN, Judge, dissenting.
Because I would affirm the trial court's summary judgment for HealthSouth, I must respectfully dissent. Generally, to establish a prima facie case in a medical-malpractice case, the plaintiff is required to produce expert medical testimony to establish the applicable standard of care and a breach of that standard of care. See Allred v. Shirley, 598 So.2d 1347 (Ala. 1992). The exception to this rule arises when the circumstances are such that the lack of care is so obvious that any layperson with common knowledge and experience *33 can understand it. See Tuscaloosa Orthopedic Appliance Co. v. Wyatt, 460 So.2d 156 (Ala.1984).
Our supreme court has recognized the following as falling within the exception: (1) where a foreign instrumentality is located in the plaintiff's body after surgery; (2) where the injury sustained is completely unrelated to the condition for which the plaintiff sought medical treatment; (3) where the plaintiff relies on a standard or authoritative medical treatise to prove what is or is not proper practice; and (4) where the plaintiff is himself or herself a medical expert qualified pursuant to the Alabama Medical Liability Act to evaluate the allegedly negligent conduct. Clearly, the Heaths' action does not fall within any one of these situations. See Anderson v. Alabama Reference Labs., 778 So.2d 806 (Ala.2000).
The Heaths contend that their claim falls within the fourth exception. They argue that a layperson with ordinary life experience would be able to comprehend the alleged breach of care suffered by Ms. Heath. I disagree. What are the factors that make certain patients "at risk" for falling, what are the proper monitoring standards for the patients, and what are the proper precautions and procedures to follow when treating patients at risk for falling are all questions to be answered by experts in the field of nursing care.
The trial court determined that the expert offered by the Heaths, Ms. Akin, was not qualified under § 6-5-548, Ala.Code 1975. It struck her affidavit. In its judgment the trial court stated:
"Based on her testimony, it seems clear to the Court that Ms. Akin was not engaged in actual hands-on care and treatment of patients as a registered nurse during the year preceding the alleged breach.... In the case at bar, there is no evidence before the Court that Ms. Akin was engaged in any teaching or other instructive activity [which would qualify her as an expert under Dowdy v. Lewis, 612 So.2d 1149 (Ala. 1992)]."
I conclude that HealthSouth made a prima facie showing by offering substantial evidence indicating that no genuine issue of material fact exists as to whether it breached the applicable standard of care, which breach allegedly caused Ms. Heath's injury. The burden therefore shifted to the Heaths to create a genuine issue of material fact as to the breach of duty that caused the injury. Because I conclude that the trial court properly struck Ms. Akin's affidavit, and that the Heaths' claim does not fall within any of the exceptions to expert medical testimony required by § 6-5-548, Ala.Code 1975, I would affirm the trial court's findings that the Heaths did not present substantial evidence creating a genuine issue of material fact. I would affirm the trial court's summary judgment for HealthSouth; therefore, I dissent.
THOMPSON, J., concurs.
NOTES
[1] Thurman Heath's claim is a derivative claim, alleging loss of consortium.
[2] The record does not reflect the dosage in milligrams of the Percodan tablet.
[3] Heath is an insulin-dependent diabetic. She has a myriad of other health problems. She is overweight at 233 pounds, she smokes 3 packs of cigarettes a day and has for 35 years, and she has arteriosclerosis, hyperlipidemia, peripheral vascular disease, and chronic obstructive pulmonary disease.
[4] Kathy Reid, L.P.N., testified in her deposition that Heath was argumentative and would not agree to having all four side rails raised.
[5] As in the present case, the nurses called as witnesses by the patient had not practiced in a doctor's office during the year preceding the alleged negligence.