LYONS, Justice.
The defendant, HealthSouth Corporation d/b/a HealthSouth Lakeshore Rehabilitation Hospital (“HealthSouth”), petitioned this Court for a writ of certiorari to review whether the Court of Civil Appeals erred in reversing the summary judgment in favor of HealthSouth and against the plaintiffs Sharon Heath and Thurman Heath. See Heath v. HealthSouth Med. Ctr., 851 So.2d 24 (Ala.Civ.App.2002). We granted certiorari review. For the reasons discussed below, we affirm the judgment of the Court of Civil Appeals.

*35
Facts and Procedural History

We adopt the statement of facts as set forth in the Court of Civil Appeals’ opinion in Heath:
“[Sharon] Heath had been admitted to the HealthSouth facility for back surgery. After her surgery, which was successfully performed, Heath was transferred to the rehabilitation section of the facility. Immediately before her transfer and before she left the surgical ward on November 21, 1999, she was given 5 milligrams (‘mg.’) Valium, 10 mg. morphine, and a Percodan tablet. Shortly after arriving at the rehabilitative floor of the facility, she received a second Percodan tablet. The Percodan was supposed to be given at four-hour intervals, but Heath received the second Per-codan tablet 2 hours and 45 minutes after she had taken the first one. In addition, Heath did not receive a scheduled dose of her insulin. [Heath is an insulin-dependent diabetic.] Heath’s assigned nurse at the rehabilitative unit, Kathy Reid, an L.P.N. and a new employee working her first day on the rehabilitation unit, raised two side rails (one rail on each side of the bed) of the four side rails on Heath’s bed and left her with a buzzer near her hand.
“Heath testified in her deposition that, shortly after she received the second Percodan tablet, she needed to use the bathroom, and she rang the buzzer to summon a nurse. Heath said that after she rang the buzzer, she waited ‘anywhere from 30 minutes to an hour’ for a nurse to come and assist her to the bathroom. The evidence as to whether the nurses were aware of the activation of Heath’s buzzer or whether the buzzer was actually working is disputed. Heath testified that, although she knew that her doctor had instructed her not to get up from her bed without the assistance of a nurse, she was unable to wait any longer and she began to climb out of bed by herself. Heath said that when she put weight on her left foot, it gave way and she fell, breaking her left hip. She immediately underwent surgical open reduction and internal fixation of the left intertrochanteric fracture.
“On March 20, 2000, the Heaths sued HealthSouth, and various fictitious defendants, alleging that the defendants had breached the standard of care in providing care and treatment for Heath while she was a patient in the facility. Specifically, they alleged that the defendants (1) had failed to identify Heath as a patient ‘at risk’ for falling, (2) had failed to properly supervise and monitor Heath while she was being treated in the facility, (3) had failed to train its nursing staff on safety issues, and (4) had failed to respond to Heath’s calls for assistance.
“On February 20, 2001, HealthSouth moved for a summary judgment, stating as grounds that no genuine issue of material fact existed as to the defendants’ breach of the standard of care. Health-South supported its motion with the affidavit of Lola Patterson, R.N. On March 1, 2001, the Heaths responded to HealthSouth’s summary-judgment motion with the affidavit testimony of Julie Akin, R.N. On March 2, 2001, Health-South submitted a supplemental affidavit of Ms. Patterson that was substantially the same as the initial affidavit, along with a certified copy of Heath’s medical records from her November 1999 hospital stay at HealthSouth. Shortly thereafter, HealthSouth moved to strike Ms. Akin’s affidavit, contending that she was not a qualified expert pursuant to the Alabama Medical Liability Act, § 6-5-548, Ala.Code 1975, which requires that the health-care expert have practiced in the same discipline as *36 the health-care-provider defendant ‘during the year preceding the date that the alleged breach of standard of care occurred.’ § 6 — 5—548(b)(3). The trial court determined that Ms. Akin did not meet those requirements, struck her affidavit, and granted HealthSouth’s summary-judgment motion.
“The Heaths filed a postjudgment motion, which the trial court denied.... On appeal, the Heaths arguefd] that the trial court erred by striking the testimony of their expert, Julie Akin, R.N., on the grounds that it did not comply with § 6-5-548. They also argue[d] that expert testimony was not necessary in this case to establish the applicable standard of care and the breach of that standard.”
Heath, 851 So.2d at 26-27 (footnotes omitted). The main opinion of the Court of Civil Appeals held that § 6-5-548, Ala. Code 1975, a part of the Alabama Medical Liability Act (“AMLA”), requires expert testimony to prove how HealthSouth breached its duty to Heath, who alleges she was a patient “at risk” for falling, and how this breach caused Heath’s injury. However, that opinion also held that expert testimony was not needed to prove that HealthSouth breached its duty of care to Heath when its nursing staff allegedly failed to respond to her calls for assistance, which failure proximately caused Heath’s injuries. The Court of Civil Appeals reversed the summary judgment.

Standard of Review

The principles of law applicable to the review of a motion for a summary judgment are well settled. The party moving for a summary judgment must make a showing that the evidence does not raise a genuine issue of material fact and that the movant is entitled to the judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. When the movant has made a prima facie showing that those two conditions are satisfied, the burden then shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Evidence is “substantial” if it is of “such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
In reviewing a summary judgment, we apply the same standard the trial court applied. Ex parte Lumpkin, 702 So.2d 462, 465 (Ala.1997). Our review is subject to the caveat that we must review the record in a, light most favorable- to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990).

Analysis

HealthSouth argues that the main opinion of the Court of Civil Appeals incorrectly held that “no expert testimony was required to establish that HealthSouth breached its duty of care with respect to Heath’s allegation that HealthSouth’s nursing staff failed to respond to her calls for assistance in walking to the bathroom and that, as a proximate consequence of that failure, Heath attempted to walk to the bathroom by herself, fell, and was injured.” Heath, 851 So.2d at 30. The court relied upon a Vermont case, Newhall v. Central Vermont Hosp., Inc., 133 Vt. 572, 349 A.2d 890 (1975), in reaching that conclusion. In Newhall, the Supreme Court of Vermont held that a patient is not required to present expert testimony as to the unreasonableness of delay in answering a call light, because the alleged lack of care related to matters that were reasonably within the knowledge and experience *37 of the average layperson. Id. However, HealthSouth argues that Newhall is inapplicable because Vermont does not have a statute comparable to § 6-5-548.
HealthSouth also contends that the Court of Civil Appeals’ holding is in conflict with Anderson v. Alabama Reference Laboratories, 778 So.2d 806 (Ala.2000), and the cases upon which Anderson relies. In Anderson, this Court stated:
“As a general rule, in a medical-malpractice action, the plaintiff is required to produce expert medical testimony to establish the applicable standard of care and a breach of that standard of care, in order to satisfy the plaintiffs burden of proof. See Allred v. Shirley, 598 So.2d 1347, 1350 (Ala.1992) (citing Tuscaloosa Orthopedic Appliance Co. v. Wyatt, 460 So.2d 156, 161 (Ala.1984)). However, ‘[a]n exception to this rule exists “in a case where want of skill or lack of care is so apparent ... as to be understood by a layman, and requires only common knowledge and experience to understand it.” ’ Wyatt, 460 So.2d at 161 (quoting Dimoff v. Maitre, 432 So.2d 1225, 1226-27 (Ala.1983)). This Court has recognized the following situations as falling within this exception:
“ ‘ “1) where a foreign instrumentality is found in the plaintiffs body following surgery; 2) where the injury complained of is in no way connected to the condition for which the plaintiff sought treatment; 3) where the plaintiff employs a recognized standard or authoritative medical text or treatise to prove what is or is not proper practice; and 4) where the plaintiff is himself or herself a medical expert qualified to evaluate the doctor’s allegedly negligent conduct.” ’
“Allred, 598 So.2d at 1350 (quoting Holt v. Godsil, 447 So.2d 191, 192-93 (Ala.1984) (citations omitted in Allred)).”
778 So.2d at 811. HealthSouth argues that because the Heaths did not present expert testimony and because their claim does not fall within any of the four circumstances enumerated in Anderson, the trial court properly entered a summary judgment for HealthSouth.
HealthSouth points to this Court’s decision in Loeb v. Cappelluzzo, 583 So.2d 1323 (Ala.1991), to support its argument that the failure to fit within one of the four categories listed in Anderson is fatal to the Heaths’ claim. In Loeb, a patient at a doctor’s office arose from a swivel stool when her doctor entered the examination room. In the process, she fell and injured herself. Loeb argued that her claim was “within the exception to the general rule requiring expert testimony” because, she claimed, the facts were such that an average person could understand the malpractice without expert testimony. Loeb, 583 So.2d at 1325. This Court disagreed, finding that the exception to the general rule requiring expert testimony is reserved for limited situations such as when a foreign instrument is left in a patient’s body following surgery or when injuries occur to the body remote from the area of operation. Id.
The Court of Civil Appeals distinguished Loeb, paraphrasing the following language from Loeb: “The parties agreed that the case would be tried under the [AMLA], which, because of the pre-trial order, established the standard of care owed to the patient in this case, and requires that the community standard of due care established by that particular Act be proven by expert medical testimony.” 583 So.2d at 1326; see Heath, 851 So.2d at 32. In this case, the Heaths had not agreed that their claim would be tried only under the AMLA; consequently, the court found that Loeb did not preclude the Heaths’ use of *38 the exception to the rule requiring expert testimony.
HealthSouth counters that the court’s attempt to distinguish this case from Loeb is misplaced. While the court’s rationale for distinguishing Loeb may reasonably be questioned, we nevertheless have reservations about concluding from Loeb that Anderson’s four narrow categories of exceptions to the general rule are an exclusive list, requiring expert testimony in all other medical-malpractice scenarios. An impermissibly restrictive standard can be avoided by a reformulation of the rule.
As previously stated, evidence of medical malpractice generally must be proven by expert testimony. A narrow exception to this rule exists “ ‘in a case where want of skill or lack of care is so apparent ... as to be understood by a layman, and requires only common knowledge and experience to understand it.’ ” Tuscaloosa Orthopedic Appliance Co. v. Wyatt, 460 So.2d 156, 161 (Ala.1984)(quot-ing Dimoff v. Maitre, 432 So.2d 1225, 1226-27 (Ala.1983), quoting in turn Lloyd Noland Found., Inc. v. Harris, 295 Ala. 63, 66, 322 So.2d 709, 711 (1975)). In Anderson, this Court illustrated this exception by listing the following examples: 1) where a foreign object, such as a sponge, remains in a patient’s body after surgery; 2) where the injury is unrelated to the condition for which the plaintiff sought treatment; 3) where a plaintiff relies on an authoritative medical treatise to prove what is or is not proper; and 4) where the plaintiff himself or herself is a medical expert. Anderson, 778 So.2d at 811.
A review of those examples reveals that only the first and second examples relate to that category of cases where want of skill or lack of care is so apparent as to be understood by a layperson, and “requires only common knowledge and experience to understand it.” Wyatt, 460 So.2d at 161. Examples three and four have nothing to do with evidence within the common knowledge of the jury and therefore do not illustrate that category of cases. For this reason alone, reformulation of the statement of the exception to the general rule requiring expert testimony is warranted.
In reviewing the Heaths’ claim under the current formulation, example one is factually inapplicable. One might argue that example two could be interpreted in such a way as to encompass the facts presented by this case, but in most cases, this example applies when a doctor operates on the wrong member of the body. Moreover, Heath’s injury is related to her treatment. As previously noted, examples three and four have nothing to do with an exception for matters within the common knowledge of a layperson. Thus, if the examples listed in Anderson as exceptions to the general rule are considered to be exhaustive, the Heaths would have been required to present expert testimony to survive HealthSouth’s motion for a summary judgment.
Such a restrictive result would not be consistent with an application of the general statement of the exception “ ‘where want of skill or lack of care is so apparent’ ” that only “ ‘common knowledge and experience’ ” are required to evaluate the plaintiffs allegations. Wyatt, 460 So.2d at 161. It would also offend common sense to require the Heaths to use an expert to aid the jury in determining whether the nurses breached the standard of care by completely ignoring for 30 minutes to an hour a call for assistance by a patient who has just returned from the surgical ward following back surgery and who was under orders not to get out of bed.
In situations other than those involving medical care, it is obvious that no expert *39 testimony would be required regarding an alleged disregard of a call for assistance. For example, if an ambulance company did not respond to a call for assistance or a gas company did not respond to a report of a gas leak and injuries resulted from their failure to respond, expert testimony would not be a prerequisite for a plaintiff to meet his or her burden of proof. More should not be required of the Heaths simply because their claim arose on the premises of a hospital.
Accordingly, we reformulate the exception to the rule, as interpreted by Loeb, to recognize first, a class of cases “ ‘where want of skill or lack of care is so apparent ... as to be understood by a layman, and requires only common knowledge and experience to understand it,’ ” Wyatt, 460 So.2d at 161 (quoting Dimoff v. Maitre, 432 So.2d 1225, 1226-27 (Ala.1983)), such as when a sponge is left in, where, for example, the wrong leg is operated on, or, as here, where a call for assistance is completely ignored for an unreasonable period of time. A second exception to the rule requiring expert testimony applies when a plaintiff relies on “ ‘ “a recognized standard or authoritative medical text or treatise,” ’ ” Anderson, 778 So.2d at 811, or is himself or herself a qualified medical expert.
Other jurisdictions use similar formulations in medical-malpractice eases. In McGraw v. St. Joseph’s Hospital, 200 W.Va. 114, 488 S.E.2d 389 (1997), the Supreme Court of West Virginia reversed a summary judgment for the defendant, holding that the plaintiff was not required to present expert testimony to survive the defendant’s summary-judgment motion. The court found that despite the general rule requiring expert testimony in medical-malpractice cases, an exception to the rule applied in McGraw. The court relied on the rationale used by jurisdictions that do not generally require expert testimony in hospital-fall cases:
“ ‘Courts generally make a distinction between medical care and custodial care or routine hospital care. The general rule is that a hospital must in the care of its patients exercise such ordinary care and attention for their safety as their mental and physical condition, known or should have been known, may require .... If the patient requires professional nursing or professional hospital care, then expert testimony as to the standard of that type of care is necessary. ... But it does not follow that the standard of all care and attention rendered by nurses or by a hospital to its patients necessarily require proof by expert testimony. The standard of non-medical, administrative, ministerial or routine care in a hospital need not be established by expert testimony because the jury is competent from its own experience to determine and apply such a reasonable-care standard.’ ”
McGraw, 200 W.Va. at 121, 488 S.E.2d at 396 (quoting Cramer v. Theda Clark Memorial Hospital, 45 Wis.2d 147, 149-50, 172 N.W.2d 427, 428 (1969) (citations omitted) (emphasis added in McGraw)). In this ease, the nurse’s responsibility to respond to Heath’s call for assistance clearly falls within the category of routine hospital care. A jury could use “common knowledge and experience” to determine whether the standard of care was breached in this case, where custodial care, not medical care, is at issue.
HealthSouth argues that McGraw should not be relied upon because West Virginia does not have a statutory scheme like the AMLA, which has been construed to require expert testimony in medical-malpractice actions. In McGraw, the court interpreted the relevant West Virginia statute, W. Va.Code § 55-7B-7 (1986), *40 to mean that trial courts had the discretion to not require expert testimony in all medical-malpractice cases. The court came to this conclusion, despite the statute’s explicit language calling for expert testimony (language not found in our statute), because of previous caselaw that allowed for an exception to the general rule. See Neary v. Charleston Area Med. Ctr., 194 W.Va. 329, 334, 460 S.E.2d 464, 469 (1995) (the court affirmed the summary judgment because the issues involved were complex and required expert testimony; however, the court recognized that expert testimony would not have been necessary in order for the plaintiff to survive á summary-judgment motion if the doctrine of res ipsa loquitor had applied).
HealthSouth contends that the AMLA leaves no room for such discretion by trial courts, and that medical-malpractice cases such as this one can survive the summary-judgment phase only if expert testimony is presented. HealthSouth is correct that the AMLA requires expert testimony in medical-malpractice cases, but this Court has recognized exceptions to that rule, when medical expertise is not necessary to prove the plaintiffs case, such as. here when nurses have failed to respond to a routine, custodial call from a patient. HealthSouth itself points to cases in the line of Anderson and Loeb recognizing that circumstances exist that would make expert testimony unnecessary. In fact, Loeb acknowledged, like McGraw, that in a situation where res ipsa loquitor would apply, expert testimony would not be needed. Loeb, 583 So.2d at 1325. Although res ipsa loquitor is not applicable in this case, this Court has gone further and said that where “the want of skill or lack of care is so apparent as to be within the comprehension of the average layman and thus requires only common knowledge and experience to understand, no expert medical testimony is necessary.” Bell v. Hart, 516 So.2d 562, 566 (Ala.1987). This Court recognized that this exception “has usually been applied” where res ipsa loquitor is applicable or where the injury is not “connected to the condition for which the plaintiff sought ■ treatment,” 516 So.2d at 566 (emphasis added), but this language does not require the conclusion that these are the only two circumstances in which a layperson would have common knowledge sufficient to understand whether the standard of care has been breached.
In Bell, the plaintiff sued her doctor, alleging that he had negligently prescribed an antidepressant. This Court determined that the trial court had not erred in excluding the Bells’ expert witnesses and finding that the absence of expert testimony precluded their medical-malpractice claim. 516 So.2d at 570. In reaching this conclusion, the Court evaluated whether the facts were within the understanding of a layperson; it concluded that they were not. However, this Court also opined in dicta, distinguishing Dimoff, that while a medical-malpractice action based on a doctor’s prescribing antidepressants would require expert testimony, a layperson could conceivably comprehend the standard of care “applicable to the taking of dental impressions with a plaster-like substance,” which was the case in Dimoff. 516 So.2d at 568. Just as the circumstance recognized in dicta by Bell does not require expert testimony, neither does a nurse’s failure to respond to routine calls for assistance fall outside the “common knowledge and experience” of the jury.
HealthSouth contends that allowing “patient monitoring standards” to be within a layperson’s “common knowledge” opens the door for cases that should be evaluated as medical-malpractice cases to be treated as simple negligence cases. HealthSouth points to “factually complex decisions” that would then be submitted to juries without *41 the requisite assistance from medical experts. HealthSouth suggests in its brief to this Court that such decisions could arise in the following scenarios:
“What if there is an emergency on the floor? What if the call light is not working or is improperly used by the patient? And, if an alleged thirty-minute delay is somehow within the understanding of laypeople for purposes of assessing liability, what then of fifteen minutes? Or five? Or one? ... [W]hat about issues of causation, such as where, as here, HealthSouth’s expert testified that the plaintiffs own conduct (i.e., failing to follow her physician’s orders about not getting out of bed) was the actual cause of the injury?”
This argument is not persuasive. All of the above scenarios are routinely determined by juries in all types of cases without the aid of an expert. A layperson does not need an expert to assist him or her in understanding that an emergency on the floor could cause a delay or that a one-minute delay could be reasonable, for example, when the nurses’ desk is two minutes from the patient’s room. As to causation, it is clear that Heath’s injuries occurred because she got out of the hospital bed and fell. A jury can certainly weigh the facts in determining causation, be they a nurse’s failure to respond within a BO-minute time frame or a doctor’s order to stay in bed. We do not see why a medical expert would be necessary to establish that Heath’s failure to follow doctor’s orders — by getting out of bed and injuring herself — was the result of the failure to respond to a call for assistance for an unreasonable period. In this case, where the issue is whether a nurse breached the standard of care by not responding to a routine call within a 30-minute period, laypersons could answer all of the aforementioned hypotheticais by using their “common knowledge and experience.” We do not see how an expert would be necessary to testify as to the “medical standards” involved.
The Chief Justice’s dissent takes the majority to task for its failure to adhere to the text of the AMLA. The Chief Justice, apparently unfettered by the stricture of stare decisis, condemns in his dissent the recognition of exceptions to the rule that allegations of medical malpractice generally must be proven by expert testimony. The exceptions discussed in this opinion have long been recognized by this Court. See Sellers v. Noah, 209 Ala. 103, 95 So. 167 (1923) (foreign instrumentality found in plaintiffs body after surgery); Parrish v. Spink, 284 Ala. 263, 224 So.2d 621 (1969) (injury complained of is in no way connected to condition for which plaintiff sought treatment); Zills v. Brown, 382 So.2d 528 (Ala.1980) (plaintiff uses recognized standard or authoritative medical text or treatise to prove proper practice); Lamont v. Brookwood Health Servs., Inc., 446 So.2d 1018 (Ala.1983) (plaintiff is himself or herself a medical expert qualified to evaluate allegedly negligent conduct). After the Legislature supplemented the AMLA by enacting the Medical Liability Act of 1987, this Court continued to recognize those exceptions on numerous occasions. See, e.g., Anderson, supra, 778 So.2d at 811; Dews v. Mobile Infirmary Ass’n, 659 So.2d 61, 63 (Ala.1995); Murray v. Alonso, 649 So.2d 1268, 1270 (Ala.1994); Henson v. Mobile Infirmary Ass’n, 646 So.2d 559, 562 (Ala.1994); Jones v. Bradford, 623 So.2d 1112, 1115 (Ala.1993); Allred v. Shirley, 598 So.2d 1347, 1350 (Ala.1992); and Bates v. Meyer, 565 So.2d 134, 136 (Ala.1990). Moreover, the Legislature amended the AMLA in 1996 (§§ 6-5-548, -549, and -549.1) and again in 2000 (§ 6-5-551) without altering the effect of the cases that serve as precedent for today’s decision. Presumably, when the *42 Legislature reenacts or amends a statute without altering language that has been judicially interpreted, it adopts a particular judicial construction. Hall v. Chi, 782 So.2d 218, 222-23 (Ala.2000). Therefore, we can presume that the exceptions recognized in this opinion are in fact consistent with legislative intent.

Conclusion

A plaintiff need not offer testimony of an expert witness in a medical-malpractice ease (a) when the act or omission is in a class of cases “ 'where want of skill or lack of care is so apparent ... as to be understood by a layman, and requires only common knowledge and experience to understand it,’ ” Wyatt, 460 So.2d at 161 (quoting Dimoff v. Maitre, 432 So.2d 1225, 1226-27 (Ala.1983)), such as when a foreign object is left in, the wrong body part is operated on, or a call for assistance is ignored for an unreasonable time; or (b) when a plaintiff either relies on “ ‘ “a recognized standard or authoritative medical text or treatise,” ’ ” Anderson, 778 So.2d at 811, or is himself a qualified medical expert. To the extent Loeb and other cases to like effect are in conflict, they are hereby overruled.
We affirm the judgment of the Court of Civil Appeals reversing the summary judgment for HealthSouth.
AFFIRMED.
HOUSTON, JOHNSTONE, HARWOOD, and WOODALL, JJ., concur.
SEE, J., concurs specially.
BROWN and STUART, JJ., concur in the result.
MOORE, C.J., dissents.