STUART, Justice.
Michelle D. Morgan appeals the summary judgment entered by the Jefferson Circuit Court in favor of Publix Super Markets, Inc., on Morgan’s claim alleging a violation of the Alabama Medical Liability Act, § 6-5-480 et seq. and § 6-5-540 et seq., Ala.Code 1975 (“the AMLA”). We reverse and remand.
I.
On December 19, 2010, Morgan went to the pharmacy at the Publix grocery store at 7272 Gadsden Highway in Trussville to *984 refill her prescription for amlodipine, a medication used to treat hypertension. Morgan had used this Publix pharmacy to fill this prescription, as well as other prescriptions, for several years without incident. However, on this occasion, the refill Morgan was given contained a mix of both amlodipine and furosemide pills.[1] Both pills are apparently small, round, and white, and Morgan, not noticing a difference in this refill, proceeded to ingest one pill from the container each day for approximately the next two weeks. During this time, she began experiencing physical problems including swelling on her face, tingling lips, hives, and painful scales and hyperpigmentation around her mouth and eyelids. Believing she was experiencing an allergic reaction to something, Morgan treated these symptoms with Benadryl, an over-the-counter antihistamine.
After approximately two weeks, Morgan returned to the Publix pharmacy to fill another prescription. Megan Locklear, the assistant pharmacy manager, approached Morgan at that time and told her that her last amlodipine refill had accidentally been partially filled with furosemide. Locklear further told Morgan that the pharmacy could not account for approximately 10 or 12 furosemide pills and gave Morgan the identification number printed on the furosemide pills. After returning home, Morgan discovered approximately two furosenide pills among the pills remaining in her amlodipine refill. Locklear subsequently telephoned Morgan, told her not to take any of the pills, and offered to refill the prescription. Morgan instead transferred the prescription to a different pharmacy and disposed of the remaining pills.
Morgan thereafter consulted with her primary-care doctor, a dermatologist, and an allergist regarding the symptoms that she began experiencing after receiving the December 19, 2010, refill from the Publix pharmacy. She testified in a subsequent deposition that the hives and facial swelling went away fairly quickly after taking Benadryl and undergoing a steroid treatment; however, she also testified that it took almost a year and microdermabrasion treatments before the hyperpigmentation and scales were fully resolved.
On October 5, 2011, Morgan sued Pub-lix, alleging that she had sustained injuries as a result of the pharmacy’s negligent issuance of the wrong medication. In its answer, Publix denied causing Morgan’s injuries, asserted that her lawsuit was governed by the AMLA, and denied breaching any applicable standard of care. Following the close of the discovery period set forth by the trial court, Publix moved for a summary judgment, arguing that Morgan could not meet her burden of proof under the AMLA because she had not identified any expert witness who was qualified to testify that the Publix pharmacist who filled the prescription had breached the applicable standard of care. Morgan opposed the motion and, while acknowledging that her claim was governed by the AMLA, argued that a pharmacy’s negligence in dispensing the wrong medication was so apparent that a layperson could understand it without the assistance of expert testimony. On December 14, 2012, the trial court conducted a hearing on Publix’s summary-judgment motion, and, on January 3, 2018, it granted the motion and entered a summary judgment in favor of Publix, holding that Publix had estab *985 lished that its pharmacists were licensed by the Alabama State Board of Pharmacy and that Morgan had failed to timely identify any similarly situated individuals who could give expert testimony regarding the standard of care applicable to pharmacists licensed in Alabama. On February 1, 2013, Morgan filed her notice of appeal.
II.
Morgan argues that the trial court erred by entering a summary judgment in favor of Publix on her claim against it. We review this argument pursuant to the following standard:
“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala.Code 1975, § 12-21-12.”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).
III.
As an initial matter, we note that there is no dispute that the AMLA governs this action. The AMLA does not specifically provide that it applies to pharmacists; however, in Cackowski v. Wal-Mart Stores, Inc., 767 So.2d 319, 324-25 (Ala.2000), this Court held that pharmacists were included within the definition in the AMLA of “other health-care providers,” see § 6-5-481(8), Ala.Code 1975, to which the AMLA applies:
“After careful consideration, we conclude that the pharmacist who filled [the appellant’s] prescription was included within the AMLA definition of ‘other health-care provider.’ To hold otherwise would be inconsistent with our prior decisions, particularly the decision in Tuscaloosa Orthopedic Appliance Co. v. Wyatt, [460 So.2d 156 (Ala.1984),] where neither an employment relationship nor a contractual relationship existed between the physician and the orthotist. An individual goes to a physician for treatment of a physical complaint. Upon examining the patient, the physician may determine that a course of medication is necessary to treat the patient’s condition. Accordingly, the physician writes out a prescription, which the patient takes to the pharmacy of his choice to be filled. Although it is the physician who prescribes the medication, it is only a pharmacist/pharmacy that can fill the prescription, by supplying the patient with the called-for medication. See § 34-23-1(17) and (18), Ala. Code 1975. Because a pharmacist and/or a pharmacy is inextricably linked to a physician’s treatment of his patients, the dispensing of drugs is an integral part of the delivery of health care services to the public. For this reason, we conclude that a pharmacist is within the definition of ‘other healthcare provider’ set out in § 6-5-481(8), Ala.Code 1975.”
*986 See also Ex parte Rite Aid of Alabama, Inc., 768 So.2d 960, 962 (Ala.2000) (holding that the operator of the pharmacy, as well as the individual pharmacist, is included within the AMLA definition of “other health-care providers”).
Under the AMLA, the plaintiff has “the burden of proving by substantial evidence that the health-care provider failed to exercise such reasonable care, skill, and diligence as other similarly situated health-care providers in the same general line of practice ordinarily have and exercise in a like case.” § 6-5-548(a), Ala.Code 1975. To successfully carry this burden, the plaintiff must prove (1) the appropriate standard of care, (2) the health-care provider’s deviation from that standard, and (3) a proximate causal connection between the health-care provider’s act or omission constituting the breach and the injury sustained by the plaintiff. Giles v. Brookwood Health Servs., Inc., 5 So.3d 533, 549 (Ala.2008). Moreover, establishing the applicable standard of care and the alleged breach of that standard of care “ordinarily” requires expert testimony from a “similarly situated health-care provider,” as that term is defined in § 6-5-548. Holcomb v. Carraway, 945 So.2d 1009, 1012 (Ala.2006). Although Morgan identified two physicians she might call to give expert testimony, Publix correctly argues that, because those physicians are not pharmacists, they are not qualified to give expert testimony regarding the standard of care applicable to pharmacists and whether that standard of care was breached in this case. Accordingly, Publix argues, the summary judgment entered by the trial court was appropriate because, it says, Morgan cannot prove her case, thus entitling Publix to a judgment as a matter of law.
Morgan concedes that the AMLA applies to her claim against Publix and that expert testimony from a similarly situated health-care provider is typically needed to prove AMLA claims. However, she argues that her claim falls within the narrow class of AMLA claims for which no expert testimony is needed because, she argues, Publix’s lack of care in partially filling her amlodipine prescription with the wrong medication “is so apparent as to be within the comprehension of the average layman and thus requires only common knowledge and experience to understand it.” Rosemont, Inc. v. Marshall, 481 So.2d 1126, 1129-30 (Ala.1985). In support of her argument, Morgan cites cases from other jurisdictions making similar holdings. See, e.g., Bender v. Walgreen Eastern Co., 399 N.J.Super. 584, 591, 945 A.2d 120, 123 (2008) (“We are unable to distinguish the error of substitution in this case — a pharmacist’s filling a prescription with a drug other than the one prescribed — from the errors our courts have found sufficiently careless to be ‘readily apparent to anyone of average intelligence and ordinary experience.’ [Estate of] Chin [v. Saint Barnabas Med. Ctr.], 160 N.J. [454,] 469-70, 734 A.2d 778 [ (1999) ] (internal quotations omitted). The deviation by a pharmacist who provides a drug different than the one prescribed is as clear as the deviation of a dentist who pulls the wrong tooth.”), and Walter v. Wal-Mart Stores, Inc., 748 A.2d 961, 972 (Me.2000) (“The negligence of the pharmacist and the harmful results [of filling a prescription with the wrong drug] were sufficiently obvious to be within the common knowledge of a lay person. It does not take an expert to know that filling a prescription with the wrong drug and failing to take the steps in place in that pharmacy to check for the wrong drug is negligence.”).
In countering Morgan’s argument, Publix does not directly dispute that a pharmacist’s error in filling a prescription *987 with the wrong medicine is sufficiently obvious as to be comprehensible by a layperson without the assistance of expert testimony; rather, Publix argues that this Court has not yet recognized this scenario as one in which expert testimony is unnecessary and that expanding the exception to include this scenario would be inappropriate in light of the doctrine of res ipsa loquitur, which, Publix argues, the exception is founded upon.[2] However, this Court already rejected similar arguments in Ex parte HealthSouth Corp., 851 So.2d 33 (Ala.2002), in which we affirmed a judgment entered by the Court of Civil Appeals holding that no expert testimony was needed to establish “whether the nurses breached the standard of care by completely ignoring for 30 minutes to an hour a call for assistance by a patient who ha[d] just returned from the surgical ward following back surgery and who was under orders not to get out of bed.” 851 So.2d at 38. On certiorari review, the petitioner argued to this Court that the Court of Civil Appeals’ holding conflicted with Anderson v. Alabama Reference Laboratories, 778 So.2d 806 (Ala.2000), in which we stated:
“As a general rule, in a medical-malpractice action, the plaintiff is required to produce expert medical testimony to establish the applicable standard of care and a breach of that standard of care, in order to satisfy the plaintiffs burden of proof. See Allred v. Shirley, 598 So.2d 1347, 1350 (Ala.1992) (citing Tuscaloosa Orthopedic Appliance Co. v. Wyatt, 460 So.2d 156, 161 (Ala.1984)). However, ‘[a]n exception to this rule exists “in a case where want of skill or lack of care is so apparent ... as to be understood by a layman, and requires only common knowledge and experience to understand it.”’ Wyatt, 460 So.2d at 161 (quoting Dimoff v. Maitre, 432 So.2d 1225, 1226-27 (Ala.1983)). This Court has recognized the following situations as falling within this exception:
“ ‘ “1) where a foreign instrumentality is found in the plaintiffs body following surgery; 2) where the injury complained of is in no way connected to the condition for which the plaintiff sought treatment; 3) where the plaintiff employs a recognized standard or authoritative medical text or treatise to prove what is or is not proper practice; and 4) where the plaintiff is himself or herself a medical expert qualified to evaluate the doctor’s allegedly negligent conduct.” ’
“Allred, 598 So.2d at 1350 (quoting Holt v. Godsil, 447 So.2d 191, 192-93 (Ala.1984) (citations omitted in Allred)).”
778 So.2d at 811. The petitioner specifically argued to this Court that, because the plaintiffs had not presented expert testimony and because their claim did not fall *988 within any of the four circumstances enumerated in Anderson, the trial court had properly entered a summary judgment in its favor. 851 So.2d at 37. However, we declined to hold that the list of exceptions in Anderson was exhaustive, stating that “[s]uch a restrictive result would not be consistent with an application of the general statement of the exception ‘“where want of skill or lack of care is so apparent” ’ that only ‘ “common knowledge and experience” ’ are required to evaluate the plaintiffs allegations. [Tuscaloosa Orthopedic Appliance Co. v.] Wyatt, 460 So.2d [156,] 161 [ (Ala.1984) ].” 851 So.2d at 38. Thus, the fact that this Court has not previously concluded that a pharmacist’s error in filling a prescription with the wrong medicine is sufficiently obvious as to be comprehensible by a layperson without the assistance of expert testimony does not preclude us from so concluding now.
Publix nevertheless urges us not to do so because, it argues, the exception to the rule that expert testimony is required in an AMLA case is premised upon the doctrine of res ipsa loquitur and, Publix further argues that doctrine is inapplicable to the present case. In Kmart Corp. v. Bassett, 769 So.2d 282, 286 (Ala.2000), we explained the doctrine of res ipsa loquitur as follows:
“The res ipsa loquitur doctrine allows ‘an inference of negligence where there is no direct evidence of negligence.’ Ex parte Crabtree Industrial Waste, Inc., 728 So.2d 155, 156 (Ala.1998). For the doctrine to apply, a plaintiff must show that:
“ ‘(1) the defendant ... had full management and control of the instrumentality which caused the injury; (2) the circumstances [are] such that according to common knowledge and the experience of mankind the accident could not have happened if those having control of the [instrumentality] had not been negligent; [and] (3) the plaintiffs injury ... resulted from the accident.’
“Crabtree Industrial Waste, 728 So.2d at 156 (quoting Alabama Power Co. v. Berry, 254 Ala. 228, 236, 48 So.2d 231, 238 (1950), and citing Ward v. Forrester Day Care, Inc., 547 So.2d 410, 411 (Ala.1989), and Khirieh v. State Farm Mut. Auto. Ins. Co., 594 So.2d 1220, 1223 (Ala.1992)).”
Publix argues that it would be inappropriate to apply the doctrine of res ipsa loqui-tur in this case because, it says, Publix did not have full management and control of the medication it ultimately provided Morgan; it is possible, Publix argues, that a manufacturer or distributor could have provided it with the commingled amlodi-pine and furosemide. We first note that Publix’s hypothetical is belied by the evidence in the record indicating that Publix discovered the problem with Morgan’s refill and that a Publix pharmacist told Morgan that the Publix pharmacy at which she had had the prescription refilled could not account for approximately 10 or 12 furo-semide pills. Regardless, however, this Court recognized in Ex parte HealthSouth that the doctrine of res ipsa loquitur was not the only foundation for the exception to the expert-testimony rule in an AMLA case, stating:
“[The petitioner] is correct that the AMLA requires expert testimony in medical-malpractice cases, but this Court has recognized exceptions to that rale, when medical expertise is not necessary to prove the plaintiffs ease, such as here when nurses have failed to respond to a routine, custodial call from a patient. [The petitioner] itself points to cases in the line of Anderson and Loeb [v. Cappelluzzo, 583 So.2d 1323 (Ala.1991),] recognizing that circumstances *989 exist that would make expert testimony unnecessary. In fact, Loeb acknowledged, like McGraw [v. St. Joseph’s Hospital, 200 W.Va. 114, 488 S.E.2d 389 (1997) ], that in a situation where res ipsa loquitur would apply, expert testimony would not be needed. Loeb, 583 So.2d at 1325. Although res ipsa loqui-tur is not applicable in this case, this Court has gone further and said that where ‘the want of skill or lack of care is so apparent as to be within the comprehension of the average layman and thus requires only common knowledge and experience to understand, no expert medical testimony is necessary.’ Bell v. Hart, 516 So.2d 562, 566 (Ala.1987). This Court recognized that this exception ‘has usually been applied’ where res ipsa loquitur is applicable or where the injury is not ‘connected to the condition for which the plaintiff sought treatment,’ 516 So.2d at 566 (emphasis added), but this language does not require the conclusion that these are the only two circumstances in which a layperson would have common knowledge sufficient to understand whether the standard of care has been breached.”
851 So.2d at 40. Thus, courts might apply the exception to the expert-testimony rule in AMLA cases where the doctrine of res ipsa loquitur does not apply if the exception is otherwise applicable.
Returning to the instant case, we have previously stated that “ ‘[prescription drugs are likely to be complex medicines, esoteric in formula and varied in effect.’ ” Stone v. Smith, Kline & French Labs., 447 So.2d 1301, 1305 (Ala.1984) (quoting Reyes v. Wyeth Labs., 498 F.2d 1264, 1274 (5th Cir.1974)). For this and other reasons the law requires them to be dispensed by licensed pharmacists as opposed to simply being purchased “over the counter.” Any individual who has ever had a prescription filled has a general understanding of this fact. Accordingly, we agree with the rationale set forth in Bender and Walter and hold that it is unnecessary for a plaintiff prosecuting an AMLA claim based on a pharmacy’s filling his or her prescription with the incorrect medication to put forth expert testimony establishing the standard of care and a breach thereof because the want of skill or lack of care in incorrectly filling a prescription is so apparent as to be within the comprehension of the average layperson without the assistance of expert testimony.
IV.
Morgan sued Publix, asserting that she had suffered physical, mental, and emotional injuries based on its negligence in partially filling her amlodipine prescription with furosemide. Following the close of discovery, the trial court granted Publix’s motion for a summary judgment, holding that Morgan was unable to prove her case because she had not identified an Alabama-licensed pharmacist as an expert witness and could not, therefore, establish a breach of the applicable standard of care as required by the AMLA Morgan appealed, and we reverse the summary judgment entered by the trial court, holding that a pharmacy’s negligence in dispensing the wrong medication is so apparent that a layperson can understand it without the assistance of expert testimony. The cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MOORE, C.J., and PARKER, SHAW, and WISE, JJ., concur.

. In Russell v. Astrue, 626 F.Supp.2d 921, 927 n. 9 (D.Minn.2009), furosemide is described as " ‘a loop diuretic used in the treatment of edema associated with congestive heart failure or hepatic or renal disease and in the treatment of hypertension.' ” (Quoting Dorland’s Illustrated Medical Dictionary 718 (29th Ed. 2000).)

. Publix also argues that we should not consider Morgan’s arguments on appeal because her response opposing Publix’s motion for a summary judgment did not contain a summary of disputed material facts, in violation, Publix argues, of Rule 56(c)(1), Ala. R. Civ. P. (stating, in relevant part, that, "[i]f the opposing party contends that material facts are in dispute, that party shall file and serve a statement in opposition supported in the same manner as is provided herein for a summary of undisputed material facts”). However, Morgan’s argument to both the trial court and this Court is not that a summary judgment in favor of Publix is inappropriate because there is a genuine issue of material fact but that, legally, she need not put forth expert testimony proving that Publix breached the applicable standard of care. See Dow, 897 So.2d at 1038 (the party moving for summary judgment must make "a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law " (emphasis added)). Morgan has supported her argument in both the trial court and this Court with citations to the relevant legal authorities, and that argument is properly before us.